IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| ENERGY VAULT, INC., § | |
| § | |
| *Plaintiff,* § | |
| vs. § | |
| § | Civil Action No. 4:23-cv-00047 |
| UNITED STANDARD ELECTRIC, LLC, § | |
| § | |
| *Defendant.* § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Energy Vault, Inc. ("Energy Vault") files this First Amended Complaint against United Standard Electric, LLC ("USE") for Breach of Contract, Breach of Express Warranty, Breach of the Implied Warranty of Merchantability, and Breach of the Implied Warranty of Fitness for a Particular Purpose and would show the Court as follows:

### I. PARTIES

1. Plaintiff Energy Vault, Inc. is a Delaware corporation with an office at 4360 Park Terrace Drive, Suite 100, Westlake Village, CA 91361.

2. Defendant United Standard Electric, LLC is an Oregon company with a principal place of business in Vancouver, Washington. Its sole member is a citizen of Washington. It may be served on its registered agent, Registered Agents, Inc., at 2355 State St., Ste. 101, Salem, OR 97301.

### II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy is in excess of $75,000 and, because Plaintiff is a citizen of California

and Delaware and Defendant is a citizen of Washington and Oregan, there is complete diversity of citizenship between the parties.

4. This Court has personal jurisdiction over USE because it submitted to jurisdiction in the Purchase Order governing the sale of goods subject to this litigation, which requires all disputes to "be resolved by litigation in a court of competent jurisdiction in a place where the Project is located." Ex. A (Purchase Order) § 18.1. Because the Project is located in Fort Stockton, Texas, USE submitted to jurisdiction in Texas. *See id.* USE further submitted to jurisdiction by selling goods with the knowledge that they would be delivered and used in Fort Stockton, Texas, which is located within this judicial district.

5. Venue is proper in the Western District of Texas, Pecos Division because the Purchase Order mandates that disputes occur in the Court covering Fort Stockton, Texas. Ex. § 18.1. In addition, venue is proper because all, or a substantial amount, of the events giving rise to this action occurred within the boundaries of this District. *See* 28 U.S.C. § 1391(b)(2).

### III.   FACTUAL BACKGROUND

6. Energy Vault is a global energy storage company specializing in grid- and utility-scale, long-duration energy storage products that enable the provision of electricity on-demand.

7. As part of one such energy power project, the Jupiter St. Gall project located in Fort Stockton, Texas ("the Project"), Energy Vault required the use of 40 electrical transformers.

**A.   USE'S PROPOSAL:**

8. On August 26, 2022, USE made a proposal to Energy Vault to sell it the needed transformers. Ex. B (Proposal).

9. USE knew that the use of the 40 transformers was for Energy Vault's Project. *Id.*

10. USE offered to provide 38 transformers at a price of $84,670.00 that would meet the following criteria:

> 3010 kVA 3 Phase Pad mounted, HV 34500/19920Y – LV 690D, 60 HZ, 5 position tap changer 2-2.5% FCAN and 2-2.5% FCBN, Al windings, Mineral oil, 65° C rise, ONAN, 45° C max ambient., dead front loop feed, pad mounted.

*Id.* at 2.

11. USE also proposed to supply two additional electrical transformers meeting slightly different specifications at a price of $58,815.00 each, as follows:

> 1250 kVA 3 Phase Pad mounted, HV 34500/19920Y – LV 400/230Y, 60 HZ, 5 position tap changer 2-2.5% FCAN and 2-2.5% FCBN, Al windings, Mineral oil, 65° C rise, ONAN, 30° C max ambient., dead front loop feed, pad mounted.

*Id.* at 2–3.

12. For all of the transformers, USE stated that "[t]he unit(s) would be manufactured and tested as per design, specifications and supervision by United Standard Electric in compliance with applicable ANSI, NEMA, and IEEE standards." *Id.* at 1.

**B.   ENERGY VAULT'S PURCHASE ORDER:**

13. Energy Vault responded to USE's proposal with a written purchase order on September 9, 2022 (the "Purchase Order"). Ex. A.

14. The Purchase Order added a change to the transformer specifications, requesting natural ester fluid be used instead of mineral oil. This increased the price of the order by $478,116.00 across the 38 transformers and by $17,480.00 across the two transformers.

15. The total price in the Purchase Order came to $3,830,686.00.

16. Energy Vault offered the Purchase Order, in part, because of its reliance on USE's expertise and ability to provide it with functioning and non-defective transformers.

17. In the Purchase Order, Energy Vault expressly rejected the earlier proposal offered by USE. It then unequivocally stated that "Purchaser shall not be bound by terms additional to or different from those contained in this Purchase Order that may appear in Seller's quotations,

acknowledgements, invoices, or in any other communication from Seller unless such terms are expressly agreed to in a writing signed by Purchaser." Ex. A § 1. Instead, the Purchase Order contained the terms and conditions that would govern the sale of transformers.

18. Energy Vault expressly informed USE that "[b]y acceptance of this Purchase Order and/or commencing performance hereunder, Seller agrees to comply fully with the terms and conditions hereof" and contained within the Purchase Order. *Id.*

19. Energy Vault further specified that the Purchase Order would constitute the Parties' entire understanding and that it would "supersede[] any prior proposals, understandings, correspondence, and/or agreements." *Id.* § 27.1.

20. Energy Vault also required in the Purchase Order that USE expressly warranty that all the transformers provided would "be merchantable, fit for Purchaser's intended purposes, and free from defects in design, material and workmanship." Ex. A § 16. Any defect would need to be replaced or repaired by USE free of charge. *Id.* Alternatively, USE would have to promptly remove the defective items and refund to Energy Vault the full contract price.

21. Energy Vault relied on these broad warranties, which were an integral part of the transaction.

22. The full express warranty is as follows:

> The Seller warrants that all articles, material and work supplied by the Seller under this Purchase Order **will be merchantable, fit for Purchaser's intended purposes, and free from defects in design, material and workmanship** and will conform to the Contract Documents including the Specifications, Drawings, samples or other descriptions furnished or adopted by the Purchaser. Seller also warrants to Purchaser that services will be performed in a first class workmanlike manner consistent with industry standards. In addition, if material furnished contains one or more manufacturer's warranties, Seller hereby assigns such warranties to Purchaser. All warranties shall survive inspection, acceptance and payment. **Seller agrees to repair or replace free of charge any part or parts which prove defective or which operate unsatisfactorily**. Seller also guarantees that the items as specified in the Purchase Order are of sufficient size or capacity to perform as specified.

> Should the items not perform as guaranteed, ***Seller agrees to make all necessary alterations, repairs, and replacement free of charge including the cost to remove or correct work of others in order to perform the warranty work. If the defects or failure to function cannot be corrected, Seller agrees to promptly replace said items free of charge or to remove the items and refund the full purchase price.*** Such remedies shall be available to Purchaser in addition to all others afforded to it at law or equity. Seller agrees to promptly make good, without cost to Purchaser, any and all defects due to faulty materials which may appear within the guarantee or warranty period so established in the Contract Documents, and if no such period is stipulated in the Contract Documents, then such guarantees shall be for a period of two years from the date of completion and acceptance of the Project by the Owner.

*Id.* § 16 (emphasis added).

23.     Energy Vault explicitly stated in the Purchase Order that any initial inspection performed at its facility or at the Project's site would only constitute a conditional acceptance, without waiver of its ability to later claim the transformers were defective. *Id.* § 7.

24.     The Purchase Order also required USE to submit to the jurisdiction and venue of this Court, which covers the Project's location in Fort Stockton, Texas. *Id.* § 18.1.

25.     The Purchase Order specified that the agreement would be governed by Texas law without reference to the conflicts of law doctrine. *Id.* § 15.

26.     Any dispute over the Purchase Order would entitle the prevailing party to its reasonable attorney's fees and costs. *Id.* § 18.2.

**C.     USE'S ACCEPTANCE:**

27.     On November 29, 2022, USE accepted Energy Vault's Purchase Order via a written acceptance and confirmation receipt ("USE's Acceptance"). Ex. C.

28.     USE's Acceptance did not modify the Purchase Order in any way. It also did not attach, specify, or reference any additional or extrinsic terms and conditions. *See id.*

D.   **USE DELIVERS DEFECTIVE TRANSFORMERS:**

29. Of the 40 transformers sold by USE, 38 were defective and did not perform as promised and warrantied.

30. During the manufacture of the defective transformers, USE performed sub-standard factory testing because their testing equipment was broken or unavailable.

31. In an effort to avoid further delay of Energy Vault's Project, USE shipped the transformers from their manufacturing facility in Mexico to the Project site in Texas without completing all of the necessary testing and inspections.

32. Once the transformers arrived, Energy Vault discovered that all but two of the transformers were defective and would not work.

33. Energy Vault promptly notified USE that the transformers were defective and participated in numerous calls and meetings with USE to try to address the problem.

34. USE has refused to remedy the defective transformers.

35. As a result, Energy Vault has had to bring in a third-party company, Titan, to help repair the USE transformers. That work is ongoing.

36. As a result of the defective transformers, Energy Vault has suffered, and will continue to suffer, considerable costs from additional inspection, testing, and repair of the defective transformers. Energy Vault has also suffered, and will continue to suffer, significant damage from delays and suffered a loss in profit and other consequential damages directly resulting from USE's defective transformers.

37. In addition to all of their prior communications regarding the defective transformers, on November 1, 2023, Energy Vault sent a formal letter notifying USE of the

defective goods, requesting that USE cure the defects, and fulfilling its notice obligations under Section 11 of the Purchase Order. Ex. D.

## IV.     CAUSES OF ACTION

### COUNT 1: BREACH OF CONTRACT

38. Energy Vault incorporates all preceding paragraphs as if fully set forth herein.

39. The Purchase Order dated September 13, 2022 and numbered PO000778 was a valid offer for the purchase of goods constituting 40 transformers meeting certain specifications. Ex. A.

40. The Purchase Order was accepted by USE by written acceptance dated November 29, 2022. Ex. C.

41. The Purchase Order is a valid, enforceable agreement.

42. Energy Vault has fully performed its obligations as required by the Purchase Order. All conditions precedent have been met or have occurred.

43. USE breached, and continues to breach, the Purchase Order by failing to provide 38 functioning, non-defective transformers.

44. Energy Vault provided notice of USE's default on November 1, 2023 in satisfaction of the three-day notice requirement contained within Section 11 of the Purchase Order.

45. As a direct and proximate result of USE's breaches, Energy Vault suffered direct, incidental, and consequential damages.

46. Energy Vault seeks its reasonable and necessary attorney's fees and court costs as provided by Section 18.2 of the Purchase Order and Chapter 38 of the Texas Civil Practice and Remedies Code.

47. Energy Vault's breach of contract claim was timely filed pursuant to Texas law.

### COUNT 2: BREACH OF EXPRESS WARRANTY

48. Energy Vault incorporates all preceding paragraphs as if fully set forth herein.

49. USE is a seller who was engaged in the sale of goods to Energy Vault.

50. USE expressly warrantied that all work and goods supplied under the Purchase Order would be "merchantable, fit for [Energy Vault's] intended purposes, and free from defects in design, material and workmanship." Ex. A § 16.

51. USE agreed that the warranty would "survive inspection, acceptance and payment." *Id.*

52. The warranty for the transformers was an integral part of the bargain between USE and Energy Vault.

53. USE breached the warranty by providing defective transformers.

54. Energy Vault provided prompt notice of the defects and attempted to work with USE to cure and repair the defective transformers prior to formally notifying USE regarding the failure of the transformers to function as promised by letter dated November 1, 2023. Ex. D.

55. Energy Vault has been harmed and suffered direct, incidental, and consequential damages for which it seeks compensation as a result of the failure of the transformers to perform as warrantied.

56. Energy Vault is additionally entitled to its reasonable attorney's fees and costs.

**COUNT 4: BREACH OF IMPLIED WARRANTY OF MERCANTABILITY**

57. Energy Vault incorporates all preceding paragraphs as if fully set forth herein.

58. USE was engaged in the sale of goods to Energy Vault.

59. USE is a merchant with respect to the sale of transformers.

60. USE's sale of transformers to Energy Vault is subject to the implied warranty of merchantability.

61. USE breached the implied warranty of merchantability by selling Energy Vault transformers that were not merchantable, that were defective, and that were not fit for the ordinary purposes for which transformers are to be used.

62. Energy Vault provided notice to USE of the failure of the transformers within a reasonable time, including, but not limited to, formal notice by letter dated November 1, 2023. Ex. D.

63. As a result of USE's breach of the implied warranty of merchantability, Energy Vault has incurred, and will continue to incur, direct, incidental, and consequential damages.

### COUNT 3: BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

64. Energy Vault incorporates all preceding paragraphs as if fully set forth herein.

65. USE was engaged in the sale of goods to Energy Vault.

66. USE knew that Energy Vault was intending to use the transformers for its Jupiter / St. Gall Project located in Fort Stockton, Texas.

67. Energy Vault relied on USE's skill, judgment, and expertise in supplying transformers for use on the Project.

68. USE's sale of transformers to Energy Vault was subject to the implied warranty of fitness for a particular purpose.

69. USE breached the implied warranty of fitness for a particular purpose by selling Energy Vault transformers that were not fit to be used on the Project and that were defective.

70. Energy Vault provided notice to USE of the failure of the transformers to perform within a reasonable time, including, but not limited to, formal notice by letter dated November 1, 2023. Ex. D.

71. As a result of USE's breach of the implied warranty of fitness for a particular purpose, Energy Vault has incurred, and will continue to incur, direct, incidental, and consequential damages.

## V. JURY DEMAND

72. Plaintiff demands a trial by jury.

## VI. PRAYER

For these reasons, Energy Vault respectfully requests the Court award it:

a) Actual, direct, unjust enrichment, indirect, special, incidental, and consequential damages;

b) Reasonable attorney's fees, expenses, court fees, and associated costs;

c) Pre- and post-judgment interest; and

d) Such other and further relief, whether legal, equitable, or otherwise, to which Energy Vault may be entitled in equity or law.

DATED: January 18, 2024                                Respectfully submitted,

**Ahmad, Zavitsanos & Mensing, PLLC**

*/s/ Todd Mensing*
Todd Mensing, attorney-in-charge
Texas State Bar No. 24013156
Alexander M. Dvorscak
Texas State Bar No. 24120461
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
tmensing@azalaw.com
advorscak@azalaw.com

**ATTORNEYS FOR PLAINTIFF
ENERGY VAULT, INC.**

**CERTIFICATE OF SERVICE**

    I hereby certify that on the January 18, 2024, a copy of the foregoing was served electronically through the U.S. District Court, Western District of Texas ECF system to all counsel of record all of whom are Filing Users of the Court's Electronic Filing System.

                                                */s/ Alexander M. Dvorscak*
                                                Alexander M. Dvorscak