IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
(Pecos Division)

| | | |
|---|---|---|
| ENERGY VAULT, INC., | § | Civil Action No. <u>4:23-cv-00047</u> |
| | § | |
| *Plaintiff,* | § | |
| vs. | § | |
| | § | **<u>JURY TRIAL DEMANDED</u>** |
| UNITED STANDARD ELECTRIC, LLC, | § | |
| | § | |
| *Defendants.* | § | |

---

## **DEFENDANT'S ANSWER, DEFENSES AND COUNTERCLAIM TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

Defendant United Standard Electric, LLC ("USE"), by counsel, and pursuant to the Federal Rules of Civil Procedure, hereby respectfully submits its answer, defenses and Counterclaim to Plaintiff's First Amended Complaint.

## **COMPLAINT NO. 1:**

    **1.**     **Plaintiff Energy Vault, Inc. is a Delaware corporation with an office at 4360 Park Terrace Drive, Suite 100, Westlake Village, CA 91361.**

## **ANSWER:**

Admitted. Denied that "with an office" satisfies the standard for pleading diversity jurisdiction or citizenship.

## **COMPLAINT NO. 2:**

    **2.**     **Defendant United Standard Electric, LLC is an Oregon company with a principal place of business in Vancouver, Washington. Its sole member is a citizen of Washington. It may be served on its registered agent, Registered Agents, Inc., at 2355 State St., Ste. 101, Salem, OR 97301.**

## **ANSWER:**

Admitted.

**COMPLAINT NO. 3:**

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy is in excess of $75,000 and, because Plaintiff is a citizen of California and Delaware and Defendant is a citizen of Washington and Oregan [sic], there is complete diversity of citizenship between the parties.

**ANSWER:**

Denied that Plaintiff has adequately or sufficiently plead the existence of diversity

jurisdiction. Denied that "with an office" satisfies the standard for pleading diversity jurisdiction

or citizenship.

**COMPLAINT NO. 4:**

4.     This Court has personal jurisdiction over USE because it submitted to jurisdiction in the Purchase Order governing the sale of goods subject to this litigation, which requires all disputes to "be resolved by litigation in a court of competent jurisdiction in a place where the Project is located." Ex. A (Purchase Order) § 18.1. Because the Project is located in Fort Stockton, Texas, USE submitted to jurisdiction in Texas. *See id.* USE further submitted to jurisdiction by selling goods with the knowledge that they would be delivered and used in Fort Stockton, Texas, which is located within this judicial district.

**ANSWER:**

Admitted only that the Purchase Order was issued and is the best evidence of its own

contents. Denied that the Purchase Order is the governing or dispositive contract document.

Otherwise, denied.

**COMPLAINT NO. 5:**

5.     Venue is proper in the Western District of Texas, Pecos Division because the Purchase Order mandates that disputes occur in the Court covering Fort Stockton, Texas. Ex. § 18.1. In addition, venue is proper because all, or a substantial amount, of the events giving rise to this action occurred within the boundaries of this District. *See* 28 U.S.C. § 1391(b)(2).

**ANSWER:**

Admitted only that the Purchase Order was issued and is the best evidence of its own

contents. Denied that the Purchase Order is the governing or dispositive contract document.

Otherwise, denied.

**COMPLAINT NO. 6:**

> **6.     Energy Vault is a global energy storage company specializing in grid- and utility-scale, long-duration energy storage products that enable the provision of electricity on-demand.**

**ANSWER:**

Denied for lack of sufficient knowledge and information.

**COMPLAINT NO. 7:**

> **7.     As part of one such energy power project, the Jupiter St. Gall project located in Fort Stockton, Texas ("the Project"), Energy Vault required the use of 40 electrical transformers.**

**ANSWER:**

Denied for lack of sufficient knowledge and information.

**COMPLAINT NO. 8:**

> **8.     On August 26, 2022, USE made a proposal to Energy Vault to sell it the needed transformers. Ex. B (Proposal).**

**ANSWER:**

Admitted.

**COMPLAINT NO. 9:**

> **9.     USE knew that the use of the 40 transformers was for Energy Vault's Project. *Id.***

**ANSWER:**

Denied.


**COMPLAINT NO. 10:**

10.    **USE offered to provide 38 transformers at a price of $84,670.00 that would meet the following criteria:**
**3010 kVA 3 Phase Pad mounted, HV 34500/19920Y – LV 690D, 60 HZ, 5 position tap changer 2-2.5% FCAN and 2-2.5% FCBN, Al windings, Mineral oil, 65° C rise, ONAN, 45° C max ambient., dead front loop feed, pad mounted.** *Id.* **at 2.**

**ANSWER:**

Admitted only that the Proposal was sent and is the best evidence of its own contents.

Otherwise, denied.


**COMPLAINT NO. 11:**

11.    **USE also proposed to supply two additional electrical transformers meeting slightly different specifications at a price of $58,815.00 each, as follows:**
**1250 kVA 3 Phase Pad mounted, HV 34500/19920Y – LV 400/230Y, 60 HZ, 5 position tap changer 2-2.5% FCAN and 2-2.5% FCBN, Al windings, Mineral oil, 65° C rise, ONAN, 30° C max ambient., dead front loop feed, pad mounted.** *Id.* **at 2–3.**

**ANSWER:**

Admitted only that the Proposal was sent and is the best evidence of its own contents.

Otherwise, denied.


**COMPLAINT NO. 12:**

12.    **For all of the transformers, USE stated that "[t]he unit(s) would be manufactured and tested as per design, specifications and supervision by United Standard Electric in compliance with applicable ANSI, NEMA, and IEEE standards."** *Id.* **at 1.**

**ANSWER:**

Admitted only that the Proposal was sent and is the best evidence of its own contents.

Otherwise, denied.


**COMPLAINT NO. 13:**

      13.    **Energy Vault responded to USE's proposal with a written purchase order on September 9, 2022 (the "Purchase Order"). Ex. A.**

**ANSWER:**

Admitted.


**COMPLAINT NO. 14:**

      14.    **The Purchase Order added a change to the transformer specifications, requesting natural ester fluid be used instead of mineral oil. This increased the price of the order by $478,116.00 across the 38 transformers and by $17,480.00 across the two transformers.**

**ANSWER:**

Admitted only that the Purchase Order was issued and is the best evidence of its own

contents. Denied that the Purchase Order is the governing or dispositive contract document.

Otherwise, denied.


**COMPLAINT NO. 15:**

      15.    **The total price in the Purchase Order came to $3,830,686.00.**

**ANSWER:**

Admitted only that the Purchase Order was issued and is the best evidence of its own

contents. Denied that the Purchase Order is the governing or dispositive contract document.

Otherwise, denied.

**COMPLAINT NO. 16:**

      16.    **Energy Vault offered the Purchase Order, in part, because of its reliance on USE's expertise and ability to provide it with functioning and non-defective transformers.**

**ANSWER:**

      Denied. Not only does USE not know what Energy Vault relied on, but USE attempted on several occasions to educate Energy Vault based on their skill, judgment, and expertise in supplying transformers. That expertise was rejected by Energy Vault.

**COMPLAINT NO. 17:**

      17.    **In the Purchase Order, Energy Vault expressly rejected the earlier proposal offered by USE. It then unequivocally stated that "Purchaser shall not be bound by terms additional to or different from those contained in this Purchase Order that may appear in Seller's quotations, acknowledgements, invoices, or in any other communication from Seller unless such terms are expressly agreed to in a writing signed by Purchaser." Ex. A § 1. Instead, the Purchase Order contained the terms and conditions that would govern the sale of transformers.**

**ANSWER:**

      Admitted only that the Purchase Order was issued and is the best evidence of its own contents. Denied that the Purchase Order necessarily trumps the Proposal. Denied that the Purchase Order is the governing or dispositive contract document. Otherwise, denied.

**COMPLAINT NO. 18:**

      18.    **Energy Vault expressly informed USE that "[b]y acceptance of this Purchase Order and/or commencing performance hereunder, Seller agrees to comply fully with the terms and conditions hereof" and contained within the Purchase Order. *Id.***

**ANSWER:**

Admitted only that the Purchase Order was issued and is the best evidence of its own

contents. Denied that the Purchase Order necessarily trumps the Proposal. Denied that the

Purchase Order is the governing or dispositive contract document. Otherwise, denied.

**COMPLAINT NO. 19:**

19.     **Energy Vault further specified that the Purchase Order would constitute the Parties' entire understanding and that it would "supersede[] any prior proposals, understandings, correspondence, and/or agreements."** *Id.* **§ 27.1.**

**ANSWER:**

Admitted only that the Purchase Order was issued and is the best evidence of its own

contents. Denied that the Purchase Order is the governing or dispositive contract document.

Otherwise, denied.

**COMPLAINT NO. 20:**

20.     **Energy Vault also required in the Purchase Order that USE expressly warranty that all the transformers provided would "be merchantable, fit for Purchaser's intended purposes, and free from defects in design, material and workmanship." Ex. A § 16. Any defect would need to be replaced or repaired by USE free of charge.** *Id.* **Alternatively, USE would have to promptly remove the defective items and refund to Energy Vault the full contract price.**

**ANSWER:**

Admitted only that the Purchase Order was issued and is the best evidence of its own

contents. Denied that the Purchase Order is the governing or dispositive contract document.

Otherwise, denied.

**COMPLAINT NO. 21:**

21.     **Energy Vault relied on these broad warranties, which were an integral part of the transaction.**

**ANSWER:**

Denied for lack of sufficient knowledge and information.


**COMPLAINT NO. 22:**

22.    **The full express warranty is as follows:**
       **The Seller warrants that all articles, material and work supplied by the
       Seller under this Purchase Order** *will be merchantable, fit for Purchaser's
       intended purposes, and free from defects in design, material and
       workmanship* **and will conform to the Contract Documents including the
       Specifications, Drawings, samples or other descriptions furnished or
       adopted by the Purchaser. Seller also warrants to Purchaser that
       services will be performed in a first class workmanlike manner
       consistent with industry standards. In addition, if material furnished
       contains one or more manufacturer's warranties, Seller hereby assigns
       such warranties to Purchaser. All warranties shall survive inspection,
       acceptance and payment.** *Seller agrees to repair or replace free of charge
       any part or parts which prove defective or which operate unsatisfactorily.*
       **Seller also guarantees that the items as specified in the Purchase Order
       are of sufficient size or capacity to perform as specified.**

       **Should the items not perform as guaranteed,** *Seller agrees to make all
       necessary alterations, repairs, and replacement free of charge including
       the cost to remove or correct work of others in order to perform the
       warranty work. If the defects or failure to function cannot be corrected,
       Seller agrees to promptly replace said items free of charge or to remove the
       items and refund the full purchase price.* **Such remedies shall be available
       to Purchaser in addition to all others afforded to it at law or equity.
       Seller agrees to promptly make good, without cost to Purchaser, any
       and all defects due to faulty materials which may appear within the
       guarantee or warranty period so established in the Contract
       Documents, and if no such period is stipulated in the Contract
       Documents, then such guarantees shall be for a period of two years from
       the date of completion and acceptance of the Project by the Owner.**
       *Id.* **§ 16 (emphasis added).**

**ANSWER:**

Admitted only that the Purchase Order was issued and is the best evidence of its own

contents. Denied that the Purchase Order necessarily trumps the Proposal. Denied that the

Purchase Order is the governing or dispositive contract document. Otherwise, denied.

**COMPLAINT NO. 23:**

      **23.**     **Energy Vault explicitly stated in the Purchase Order that any initial inspection performed at its facility or at the Project's site would only constitute a conditional acceptance, without waiver of its ability to later claim the transformers were defective.** *Id.* **§ 7.**

**ANSWER:**

Admitted only that the Purchase Order was issued and is the best evidence of its own contents. Denied that the Purchase Order necessarily trumps the Proposal. Denied that the Purchase Order is the governing or dispositive contract document. Otherwise, denied.

**COMPLAINT NO. 24:**

      **24.**     **The Purchase Order also required USE to submit to the jurisdiction and venue of this Court, which covers the Project's location in Fort Stockton, Texas.** *Id.* **§ 18.1.**

**ANSWER:**

Admitted only that the Purchase Order was issued and is the best evidence of its own contents. Denied that the Purchase Order necessarily trumps the Proposal. Denied that the Purchase Order is the governing or dispositive contract document. Otherwise, denied.

**COMPLAINT NO. 25:**

      **25.**     **The Purchase Order specified that the agreement would be governed by Texas law without reference to the conflicts of law doctrine.** *Id.* **§ 15.**

**ANSWER:**

Admitted only that the Purchase Order was issued and is the best evidence of its own contents. Denied that the Purchase Order necessarily trumps the Proposal. Denied that the Purchase Order is the governing or dispositive contract document. Otherwise, denied.

**COMPLAINT NO. 26:**

      **26.**     **Any dispute over the Purchase Order would entitle the prevailing party to its reasonable attorney's fees and costs.** *Id.* **§ 18.2.**

**ANSWER:**

Admitted only that the Purchase Order was issued and is the best evidence of its own contents. Denied that the Purchase Order necessarily trumps the Proposal. Denied that the Purchase Order is the governing or dispositive contract document. Otherwise, denied.

**COMPLAINT NO. 27:**

      **27.**     **On November 29, 2022, USE accepted Energy Vault's Purchase Order via a written acceptance and confirmation receipt ("USE's Acceptance"). Ex. C.**

**ANSWER:**

Admitted only that the Acceptance was sent and is the best evidence of its own contents. Denied that the Purchase Order necessarily trumps the Acceptance or Proposal or is the governing document. Denied that the Purchase Order is the governing or dispositive contract document. Otherwise, denied.

**COMPLAINT NO. 28:**

      **28.**     **USE's Acceptance did not modify the Purchase Order in any way. It also did not attach, specify, or reference any additional or extrinsic terms and conditions.** *See id.*

**ANSWER:**

Admitted only that the Acceptance was sent and is the best evidence of its own contents. Denied that the Purchase Order necessarily trumps the Acceptance or Proposal or is the governing document. Denied that the Purchase Order is the governing or dispositive contract document. Otherwise, denied.

## COMPLAINT NO. 29:

29.     Of the 40 transformers sold by USE, 38 were defective and did not perform as promised and warrantied.

## ANSWER:

Denied. All but two transformers performed as warrantied and passed the required tests.

## COMPLAINT NO. 30:

30.     During the manufacture of the defective transformers, USE performed substandard factory testing because their testing equipment was broken or unavailable.

## ANSWER:

Denied. USE performed the tests as required.

## COMPLAINT NO. 31:

31.     In an effort to avoid further delay of Energy Vault's Project, USE shipped the transformers from their manufacturing facility in Mexico to the Project site in Texas without completing all of the necessary testing and inspections.

## ANSWER:

Denied. USE performed the tests as required.

## COMPLAINT NO. 32:

32.     Once the transformers arrived, Energy Vault discovered that all but two of the transformers were defective and would not work.

## ANSWER:

Denied. Only two transformers failed field tests.

## COMPLAINT NO. 33:

33.     Energy Vault promptly notified USE that the transformers were defective and participated in numerous calls and meetings with USE to try to address the problem.

**ANSWER:**

Admitted only that Energy Vault falsely claimed the transformers were defective.

Otherwise, denied.

**COMPLAINT NO. 34:**

34.     **USE has refused to remedy the defective transformers.**

**ANSWER:**

Denied. USE made repeated efforts to educate Energy Vault on the applicable standards

and agreed to fix the two transformers that allegedly had issues.

**COMPLAINT NO. 35:**

35.     **As a result, Energy Vault has had to bring in a third-party company, Titan, to help repair the USE transformers. That work is ongoing.**

**ANSWER:**

Denied. Plaintiff would not permit Defendant to repair the transformers that were

allegedly defective.

**COMPLAINT NO. 36:**

36.     **As a result of the defective transformers, Energy Vault has suffered, and will continue to suffer, considerable costs from additional inspection, testing, and repair of the defective transformers. Energy Vault has also suffered, and will continue to suffer, significant damage from delays and suffered a loss in profit and other consequential damages directly resulting from USE's defective transformers.**

**ANSWER:**

Denied. Plaintiff would not permit Defendant to repair the transformers that were

allegedly defective.

**COMPLAINT NO. 37:**

>    37.    In addition to all of their prior communications regarding the defective transformers, on November 1, 2023, Energy Vault sent a formal letter notifying USE of the defective goods, requesting that USE cure the defects, and fulfilling its notice obligations under Section 11 of the Purchase Order. Ex. D.

**ANSWER:**

Admitted only that the letter was sent and is the best evidence of its own contents. Denied that it was accurate or correct.

**COMPLAINT NO. 38:**

>    38.    Energy Vault incorporates all preceding paragraphs as if fully set forth herein.

**ANSWER:**

Defendant incorporates by reference its answers to Paragraphs 1 through 37 as though fully set forth therein.

**COMPLAINT NO. 39:**

>    39.    The Purchase Order dated September 13, 2022 and numbered PO000778 was a valid offer for the purchase of goods constituting 40 transformers meeting certain specifications. Ex. A.

**ANSWER:**

Objected to as calling for a legal conclusion. To the extent an answer is required, denied for lack of sufficient knowledge and information.

**COMPLAINT NO. 40:**

>    40.    The Purchase Order was accepted by USE by written acceptance dated November 29, 2022. Ex. C.

**ANSWER:**

Admitted only that the Acceptance was sent and is the best evidence of its own contents.

Denied that the purchase order necessarily trumps the Acceptance or the Proposal or is the

governing document. Otherwise, denied.

**COMPLAINT NO. 41:**

    **41.**    **The Purchase Order is a valid, enforceable agreement.**

**ANSWER:**

Objected to as calling for a legal conclusion. To the extent an answer is required, denied

for lack of sufficient knowledge and information.

**COMPLAINT NO. 42:**

    **42.**    **Energy Vault has fully performed its obligations as required by the Purchase Order.**
            **All conditions precedent have been met or have occurred.**

**ANSWER:**

Denied. Plaintiff has attempted to impose its own standards on the equipment.

**COMPLAINT NO. 43:**

    **43.**    **USE breached, and continues to breach, the Purchase Order by failing to provide 38 functioning, non-defective transformers.**

**ANSWER:**

Denied. All but two transformers are ready to use in the field.

**COMPLAINT NO. 44:**

    **44.**    **Energy Vault provided notice of USE's default on November 1, 2023 in satisfaction of the three-day notice requirement contained within Section 11 of the Purchase Order.**

**ANSWER:**

Admitted only that the notice was sent and is the best evidence of its own contents.

Denied that it was accurate or correct. Otherwise, denied.

**COMPLAINT NO. 45:**

    **45.    As a direct and proximate result of USE's breaches, Energy Vault suffered direct, incidental, and consequential damages.**

**ANSWER:**

Denied.

**COMPLAINT NO. 46:**

    **46.    Energy Vault seeks its reasonable and necessary attorney's fees and court costs as provided by Section 18.2 of the Purchase Order and Chapter 38 of the Texas Civil Practice and Remedies Code.**

**ANSWER:**

Admitted only that Plaintiff seeks the specified relief. Denied that Plaintiff is entitled to

the specified relief or any other relief.

**COMPLAINT NO. 47:**

    **47.    Energy Vault's breach of contract claim was timely filed pursuant to Texas law.**

**ANSWER:**

Objected to as calling for a legal conclusion. To the extent an answer is required, denied

for lack of sufficient knowledge and information.

**COMPLAINT NO. 48:**

    **48.    Energy Vault incorporates all preceding paragraphs as if fully set forth herein.**

**ANSWER:**

Defendant incorporates by reference its answers to Paragraphs 1 through 47 as though fully set forth therein.

**COMPLAINT NO. 49:**

49.     **USE is a seller who was engaged in the sale of goods to Energy Vault.**

**ANSWER:**

Admitted.

**COMPLAINT NO. 50:**

50.     **USE expressly warrantied that all work and goods supplied under the Purchase Order would be "merchantable, fit for [Energy Vault's] intended purposes, and free from defects in design, material and workmanship." Ex. A § 16.**

**ANSWER:**

Objected to as calling for a legal conclusion. To the extent an answer is required, denied for lack of sufficient knowledge and information.

**COMPLAINT NO. 51:**

51.     **USE agreed that the warranty would "survive inspection, acceptance and payment." *Id.***

**ANSWER:**

Objected to as calling for a legal conclusion. To the extent an answer is required, denied for lack of sufficient knowledge and information.

**COMPLAINT NO. 52:**

52.     **The warranty for the transformers was an integral part of the bargain between USE and Energy Vault.**

**ANSWER:**

Objected to as calling for a legal conclusion. To the extent an answer is required, denied for lack of sufficient knowledge and information.

**COMPLAINT NO. 53:**

**53.     USE breached the warranty by providing defective transformers.**

**ANSWER:**

Denied. All but two transformers meet standards and are not defective. USE has repeatedly offered to repair the two transformers that allegedly have issues. Plaintiff would not permit it to do so.

**COMPLAINT NO. 54:**

**54.     Energy Vault provided prompt notice of the defects and attempted to work with USE to cure and repair the defective transformers prior to formally notifying USE regarding the failure of the transformers to function as promised by letter dated November 1, 2023. Ex. D.**

**ANSWER:**

Denied. Energy Vault refused to accept the expert technical response provided by USE's engineering team. Energy Vault refused to allow USE to repair the two units that allegedly needed field service repairs.

**COMPLAINT NO. 55:**

**55.     Energy Vault has been harmed and suffered direct, incidental, and consequential damages for which it seeks compensation as a result of the failure of the transformers to perform as warrantied.**

**ANSWER:**

Denied. Only two transformers tested outside the standards for the industry. Energy Vault refused to accept the expert technical response provided by USE's engineering team. Energy Vault refused to allow USE to repair the two units that allegedly needed field service repairs.

**COMPLAINT NO. 56:**

**56.     Energy Vault is additionally entitled to its reasonable attorney's fees and costs.**

**ANSWER:**

Denied. Energy Vault refused to accept the expert technical response provided by USE's engineering team. Energy Vault refused to allow USE to repair the two units that allegedly needed field service repairs.

**COMPLAINT NO. 57:**

**57.     Energy Vault incorporates all preceding paragraphs as if fully set forth herein.**

**ANSWER:**

Defendant incorporates by reference its answers to Paragraphs 1 through 56 as though fully set forth therein.

**COMPLAINT NO. 58:**

**58.     USE was engaged in the sale of goods to Energy Vault.**

**ANSWER:**

Admitted.

**COMPLAINT NO. 59:**

**59.     USE is a merchant with respect to the sale of transformers.**

**ANSWER:**

Admitted.


**COMPLAINT NO. 60:**

    60.    **USE's sale of transformers to Energy Vault is subject to the implied warranty of merchantability.**

**ANSWER:**

Objected to as calling for a legal conclusion. To the extent an answer is required, denied

for lack of sufficient knowledge and information.


**COMPLAINT NO. 61:**

    61.    **USE breached the implied warranty of merchantability by selling Energy Vault transformers that were not merchantable, that were defective, and that were not fit for the ordinary purposes for which transformers are to be used.**

**ANSWER:**

Denied. All but two transformers are "fit for the ordinary purposes for which

transformers are to be used." USE consistently offered to repair the two units that had test results

outside the standard, but Plaintiff refused to let it do so.


**COMPLAINT NO. 62:**

    62.    **Energy Vault provided notice to USE of the failure of the transformers within a reasonable time, including, but not limited to, formal notice by letter dated November 1, 2023. Ex. D.**

**ANSWER:**

Objected to as calling for a legal conclusion. To the extent an answer is required, denied

for lack of sufficient knowledge and information.

## COMPLAINT NO. 63:

**63.     As a result of USE's breach of the implied warranty of merchantability, Energy Vault has incurred, and will continue to incur, direct, incidental, and consequential damages.**

## ANSWER:

Denied. USE delivered working and compliant transformers, except for two which USE

offered to repair.  USE consistently offered to repair the two units that had test results outside the

standard, but Plaintiff refused to let it do so.

## COMPLAINT NO. 64:

**64.     Energy Vault incorporates all preceding paragraphs as if fully set forth herein.**

## ANSWER:

Defendant incorporates by reference its answers to Paragraphs 1 through 63 of the

Complaint as though fully set forth therein.

## COMPLAINT NO. 65:

**65.     USE was engaged in the sale of goods to Energy Vault.**

## ANSWER:

Admitted.

## COMPLAINT NO. 66:

**66.     USE knew that Energy Vault was intending to use the transformers for its Jupiter / St. Gall Project located in Fort Stockton, Texas.**

## ANSWER:

Denied.

**COMPLAINT NO. 67:**

>    67.    Energy Vault relied on USE's skill, judgment, and expertise in supplying transformers for use on the Project.

**ANSWER:**

Denied. Not only does USE not know what Energy Vault relied on, but USE attempted on several occasions to educate Energy Vault and fix the two actual issues based on their skill, judgment, and expertise in supplying transformers. That expertise was rejected by Energy Vault.

**COMPLAINT NO. 68:**

>    68.    USE's sale of transformers to Energy Vault was subject to the implied warranty of fitness for a particular purpose.

**ANSWER:**

Objected to as calling for a legal conclusion. To the extent an answer is required, denied for lack of sufficient knowledge and information.

**COMPLAINT NO. 69:**

>    69.    USE breached the implied warranty of fitness for a particular purpose by selling Energy Vault transformers that were not fit to be used on the Project and that were defective.

**ANSWER:**

Denied.

**COMPLAINT NO. 70:**

>    70.    Energy Vault provided notice to USE of the failure of the transformers to perform within a reasonable time, including, but not limited to, formal notice by letter dated November 1, 2023. Ex. D.

**ANSWER:**

Admitted only that the letter was sent. Denied that it was accurate. Objected to as calling

for a legal conclusion. To the extent an answer is required, denied for lack of sufficient

knowledge and information. When Energy Vault did provide notice, USE always responded in a

timely manner.

**COMPLAINT NO. 71:**

> **71.**   **As a result of USE's breach of the implied warranty of fitness for a particular purpose, Energy Vault has incurred, and will continue to incur, direct, incidental, and consequential damages.**

**ANSWER:**

Denied. All but two transformers are "fit for the ordinary purposes for which

transformers are to be used." USE consistently offered to repair the two units that had test results

outside the standard, but Plaintiff refused to let it do so.

**COMPLAINT NO. 72:**

> **72.**   **Plaintiff demands a trial by jury.**

**ANSWER:**

Defendant demands trial by jury on all issues so triable.

**COMPLAINT:**

> **For these reasons, Energy Vault respectfully requests the Court award it:**
> a)   **Actual, direct, unjust enrichment, indirect, special, incidental, and consequential damages;**
> b)   **Reasonable attorney's fees, expenses, court fees, and associated costs;**
> c)   **Pre- and post-judgment interest; and**
> d)   **Such other and further relief, whether legal, equitable, or otherwise, to which Energy Vault may be entitled in equity or law.**

**ANSWER:**

Admitted only that Plaintiff seeks the specified relief. Denied that Plaintiff is entitled to the specified relief or any other relief.

## DEFENSES AND AFFIRMATIVE DEFENSES

1.      **Prior Material Breach**. Energy Vault wrongfully rejected the vast majority of the transformers which were compliant, wrongfully failed to pay at least $860,000.00 of the purchase price, and wrongfully failed and refused to give USE a reasonable opportunity to inspect, repair or replace the two (2) transformers that arguably were deficient or defective. Energy Vault thus committed the first and prior material breaches, which discharged and voided USE's duties and obligations under any contract. USE is entitled to set-off its damages from Energy Vault's breaches against the damages asserted by Energy Vault, and to recoup from Energy Vault the damages suffered by USE which equal or exceed the damages asserted by Energy Vault.

2.      **Set-Off and Recoupment**. Energy Vault wrongfully rejected the vast majority of the transformers which were compliant, wrongfully failed to pay at least $860,000.00 of the purchase price, and wrongfully failed and refused to give USE a reasonable opportunity to inspect, repair or replace the two (2) transformers that arguably were deficient or defective. Energy Vault thus committed the first and prior material breaches, which discharged and voided USE's duties and obligations under any contract. USE is entitled to set-off its damages from Energy Vault's breaches against the damages asserted by Energy Vault, and to recoup from Energy Vault the damages suffered by USE which equal or exceed the damages asserted by Energy Vault.

3.      **Prevention of Performance**. Energy Vault wrongfully rejected the vast majority of the transformers which were compliant, wrongfully failed to pay at least $860,000.00 of the purchase price, and wrongfully failed and refused to give USE a reasonable opportunity to inspect,

repair or replace the two (2) transformers that arguably were deficient or defective. Energy Vault thus committed the first and prior material breaches, which discharged and voided USE's duties and obligations under any contract. USE is entitled to set-off its damages from Energy Vault's breaches against the damages asserted by Energy Vault, and to recoup from Energy Vault the damages suffered by USE which equal or exceed the damages asserted by Energy Vault. Energy Vault's breaches and wrongful refusals prevented USE from being able to more fully perform its former obligations.

4.      **Failure to Mitigate Damages**. Plaintiff failed to mitigate its damages by refusing to permit USE a reasonable opportunity to inspect, repair or replace the transformers that allegedly were defective.  Rather than show deference to USE's expertise and accept USE's attempts to educate Energy Vault on the applicable standards for the transformers, Energy Vault instead attempted to impose its own standards on the transformers, and Energy Vault wrongfully and improperly prevented USE from being able to inspect, repair or replace them.

5.      **Particular Specifications**. The express, particular specifications agreed upon by the parties trump and supersede any more general warranties that are implied or which were agreed to by the parties.

6.      **Specially Manufactured Goods**. The implied warranties relied upon by Plaintiff Energy Vault do not apply to specially manufactured goods.

7.      **Superseding Intervening Cause**.  Plaintiff failed to mitigate its damages by refusing to allow USE a reasonable opportunity to inspect, repair or replace the transformers that allegedly were defective.  Rather than show deference to USE's expertise and accept USE's attempts to educate Energy Vault on the applicable standards for the transformers, Energy Vault instead attempted to impose its own standards on the transformers and wrongfully and improperly

prevented USE from being able to inspect, repair or replace them. Energy Vault's wrongful refusals and breaches were the superseding intervening causes of tis alleged damages.

8. **Statute of Frauds**. Plaintiff's claims are or may be barred by the relevant statute(s) of frauds.

9. **Statute of Limitation and Repose**. Plaintiff's claims are or may be barred by the relevant statute(s) of limitation and/or repose.

10. **Unclean Hands**. Plaintiff's claims are or may be barred by its own unclean hands and inequitable and/or illegal conduct.

11. **Laches, Waiver, Estoppel and Acquiescence**. Plaintiff's claims are or may be barred by its laches, waiver, estoppel and acquiescence. Plaintiff repeatedly refused USE's offers to inspect, repair or replace the transformers that allegedly were defective.

12. **Failure to Plead or Establish Subject Matter Jurisdiction**. Plaintiff has failed to properly plead or establish subject matter jurisdiction or diversity of citizenship. Pleading that Plaintiff Energy Vault has "an office" in California is insufficient to establish its citizenship or principal place of business for purposes of diversity of citizenship or subject matter jurisdiction.

13. **Limitation and Exclusion of Remedies**. The damages and remedies sought by Plaintiff are excluded and limited by the Terms and Conditions of the USE Proposal.

## <u>DEMAND FOR JURY TRIAL</u>

Defendant United Standard Electric, LLC. demands trial by jury on all issues so triable.

## COUNTERCLAIM

Defendant and Counterclaim Plaintiff United Standard Electric, LLC ("USE") respectfully submits this Counterclaim against Plaintiff and Counterclaim Defendant Energy Vault, Inc. ("Energy Vault").

1.      USE is a limited liability company organized under the laws of Oregon with its principal place of business in Washington State. For diversity jurisdiction purposes, its sole member is a citizen and domiciliary of the State of Washington.

2.      Energy Vault, Inc. is a Delaware corporation with an office (perhaps—on information and belief—its principal place of business) located at 4360 Park Terrace Drive, Suite 100, Westlake Village, CA 91361.

3.      The amount in controversy exceeds $75,000.00 exclusive of interest, costs, and attorneys' fees. Diversity jurisdiction exists because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000.00.

4.      This Court also has ancillary jurisdiction and supplemental jurisdiction over USE's Counterclaim because Energy Vault filed its original and amended complaints here, and because USE's Counterclaim arises from the same nucleus of operative facts and from the same contracts, transactions, and occurrences as the claims asserted by Energy Vault in its Amended Complaint.

5.      The parties' contract consists of USE's Proposal, the USE Proposal Terms and Conditions, and—only to the extent consistent therewith—the Energy Vault Purchase Order. There were also certain oral modifications and amendments.

6.      USE made forty (40) specially manufactured electrical transformers and sold and delivered them to Energy Vault.

7. At least thirty-eight (38) of the forty (40) transformers performed to specifications. USE was entitled to a reasonable opportunity to inspect, repair and replace the allegedly defective transformers, but Energy Vault wrongfully and improperly refused and denied USE any reasonable opportunity to do so.

8. Energy Vault wrongfully rejected at least thirty-eight (38) of the forty (40) transformers, even though they fully met the contract specifications and industry standards, were merchantable, and were fit for their intended use and purpose.

9. Energy Vault wrongfully has refused to pay USE at least $860,000.00 of the purchase price that is due.

10. USE has fully performed the contract and has fully satisfied all conditions precedent, except as and when Plaintiff Energy Vault has wrongfully prevented USE from doing so.

## COUNT I: BREACH OF CONTRACT

11. USE hereby incorporates by reference the allegations stated in all prior Paragraphs to this Counterclaim as though set forth therein.

12. Energy Vault breached the parties' contract, including the implied covenant of good faith and fair dealing, by wrongfully refusing and denying USE a reasonable or adequate opportunity to inspect, repair or replace the allegedly defective goods, by wrongfully rejecting at least thirty-eight (38) of the forty (40) transformers, and by failing and refusing to pay USE at least $860,000.00 due from Energy Vault to USE under the parties' contract.

13. USE has been damaged by Energy Vault's breaches of contract in the amount of at least $860,000.00, plus interest, costs, and attorneys' fees.

14.    USE is entitled to recover its attorneys' fees from Energy Vault pursuant to the Contract and Chapter 38 of the Texas Civil Practice and Remedies Code.

WHEREFORE, USE respectfully requests and demands that the Court enter judgment against Energy Vault and in favor of USE for:

1.    actual compensatory damages, including interest and special and consequential damages;

2.    reasonable attorneys' fees, expenses, court costs and fees, and related or associated costs;

3.    pre-judgment and post-judgment interest; and,

4.    such other and further relief, whether legal, equitable, or otherwise, to which Energy Vault may be entitled at law or in equity, or which the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

USE respectfully requests and demands trial by jury on its Counterclaim and on all issues so triable.

Respectfully Submitted This 1st Day of February, 2024:

UNITED STANDARD ELECTRIC, LLC


By: /s/ Denis Dennis
        Counsel

Denis Dennis (Texas Bar No. 05655566)
Kelly, Morgan, Dennis,
Corzine & Hansen, P.C.
4840 E. University Blvd., Suite 200 (79762)
P.O. Box 1311
Odessa, Texas 79760-1311
432-367-7271
432-363-9121 fax
ddennis@kmdfirm.com
*Local Counsel for Defendant United Standard Electric, LLC*



By: /s/ Michael C. Whitticar
        Counsel

Michael C. Whitticar (V.S.B. No. 32968)
NOVA IP Law, PLLC
155 Broadview Avenue, Suite 200
Warrenton, VA 20186
Phone: (571) 386-2980
Fax: (855) 295-0740
Email: mikew@novaiplaw.com
*Virginia Counsel for Defendant United Standard Electric, LLC*
*Pro Hac Vice* Planned

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st Day of February, 2024, the foregoing Answer, Defenses and Counterclaim were filed with the Court's CM/ECF system and served on the following counsel of record by email:


Ahmad, Zavitsanos & Mensing, PLLC
Todd Mensing, attorney-in-charge
Texas State Bar No. 24013156
Alexander M. Dvorscak
Texas State Bar No. 24120461
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
tmensing@azalaw.com
advorscak@azalaw.com
*Counsel for Plaintiff Energy Vault, Inc.*

/s/ Denis Dennis
Denis Dennis