IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| ENERGY VAULT, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No. 4:23-cv-00047 |
| | § | |
| UNITED STANDARD ELECTRIC, LLC, | § | |
| | § | |
| *Defendant.* | § | |

---

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY ANSWERS

---

### INTRODUCTION

In 2022, Energy Vault ("EV"), a global energy storage company, purchased 40 electrical transformers for an energy power project in Fort Stockton, Texas. EV conveyed specific technical requirements for these transformers to United Standard Electric ("USE") through a Purchase Order that USE accepted without modification.

EV filed this lawsuit in November 2023 after almost every transformer delivered by USE was defective and failed to perform as promised. EV asserts a breach of contract claim and several claims for breach of express and implied warranties. Dkt. No. 12 ¶¶ 38–71. USE has countered with its own breach-of-contract counterclaim and several affirmative defenses. Among other things, it contends that its transformers were compliant with the relevant standards, but EV allegedly refused to allow USE an opportunity to inspect or correct any defects. *See* Dkt. No. 14 at 23–28.

To evaluate the merits of USE's defenses, EV served its first set of discovery requests in early April. Yet, to date, USE has not furnished a single adequate answer to EV's contention

interrogatories.  And, by its own admission, USE has also failed to produce relevant documents in connection with these contention interrogatories.

USE's wall-to-wall objections demonstrate that it has no intent, absent a Court order, to disclose even the basic facts and documents that support its defenses.  Under Federal Rule of Civil Procedure 37(a)(3)(B), the Court should put a stop to USE's obstructionism by compelling proper discovery responses.

SUMMARY OF ARGUMENT

EV served its first set of interrogatories and requests for production on April 5, 2024.  Just days before the response deadline, USE requested a one-week extension.  Ex. A, Email from T. Mensing to M. Whitticar.  Although EV agreed to this extension, USE nonetheless proceeded to serve initial responses that were deficient on their face.

After acknowledging several of these deficiencies during a meet-and-confer, USE's counsel agreed to supplement its interrogatory answers and document production by June 7, 2024.  *See* Ex. B, Email from E. Goolsby to M. Whitticar (memorializing conversation during meet-and-confer).

But USE's discovery responses remain deficient, as explained in detail below.  *See generally* Ex. C, Defs.' Supp. Objs. and Answers to EV's 1st Set of Interrogs. (served Jun. 5, 2024); Ex. D, Defs.' Objs. and Resps. To EV's 1st Set of RFPs (served May 24, 2024).  These three examples from USE's latest responses illustrate the problem:

<u>**INTERROGATORY NO. 3**</u>:
Provide the factual basis for Your contention that 38 out of 40 Transaction Performers "fully met the contract specifications and industry standards, were merchantable, and were fit for their intended use and purpose," as stated in Your Counterclaim (Dkt. 14 ¶ 8). In providing this factual basis, please also provide the logically and factually related information of all documents—identified by Bates label—that support Your contention.

2

**OBJECTIONS:**
Calls for legal analysis and legal conclusions. Calls for contention discovery prior to the close of discovery and the final pre-trial conference.

**ANSWER:**
- Bernardo
    - Re: United Standard Electric payments USE/EV000138-146
- Nancy
    - FW: [EXTERNAL]USE INVOICES USE/EV0000823-973
    - Proposed EV Letter USE/EV001082-1085
    - USE_Correspondence_-_11012023  USE001529-1531

Ex. C at 3; *see also id.* at 1–5 (providing inadequate or no narrative response to Interrogatory Nos. 2–6).

**INTERROGATORY NO. 7:**
Explain the factual basis for Your contention that USE was prevented from having "a reasonable opportunity to inspect, repair or replace the two (2) transformers that arguably were deficient or defective" as stated in Your Answer (Dkt. 14 at 23–24). In providing the factual basis, provide the logically and factually related information of identifying all documents that support Your contention by Bates label.

**OBJECTIONS:**
Calls for contention discovery prior to the close of discovery and the final pre-trial conference.

**ANSWER:**
(Waiting for additional input from client)

Ex. C at 5–6; *see also id.* at 5–8 (providing no response to Interrogatory Nos. 7–11).

**DOCUMENT REQUEST NO. 15:**
All Documents and Communications related to other instances of customers claiming a transformer was defective or required repair from 2021 to present as described in Interrogatory No. 8.

**OBJECTIONS:**
Attorney-client privilege and litigation work product. USE incorporates by reference its Objections to Plaintiff's Interrogatories. Calls for disclosure of CBI. Irrelevant, overly broad, unduly burdensome.

**ANSWER:**
(Waiting for additional input from client)

3

Ex. D at 11–13.

Faced with non-answers like these, EV cannot narrow the issues for further discovery, begin depositions, or otherwise understand the scope of USE's defenses and breach-of-contract counterclaim. Having exhausted several attempts to resolve these issues by agreement, EV seeks the Court's intervention to enforce USE's discovery obligations. *See* FED. R. CIV. P. 37(a)(3)(B).

ARGUMENTS AND AUTHORITIES

**A.      USE owes answers to routine interrogatories that seek information on core issues in the case.**

Out of the 11 interrogatories that EV served, USE attempted to answer only one in narrative form and has lodged boilerplate objections to avoid answering the others. These objections are unfounded. EV's interrogatories seek basic facts that will be used to narrow the scope of future discovery.

**1.      Interrogatories that USE has failed to answer entirely (Interrogatory Nos. 7–11)**

USE has failed to provide any answer to five interrogatories, even after committing to supplementing its responses by June 7, 2024. Ex. B, Email from E. Goolsby to M. Whitticar. To date, USE's responses to Interrogatory Nos. 7–11 continue to read: "Waiting for additional input from client."

These interrogatories seek basic information about USE's affirmative defenses and breach-of-contract counterclaim.

- **Interrogatory No. 7**: Explain the factual basis for Your contention that USE was prevented from having "a reasonable opportunity to inspect, repair or replace the two (2) transformers that arguably were deficient or defective" as stated in Your Answer (Dkt. 14 at 23–24). In providing the factual basis, provide the logically and factually

4

related information of identifying all documents that support Your contention by Bates label.

- **Interrogatory No. 8**: Identify the facilities by name and location for where each of the Transaction Transformers were manufactured. For each facility You identify, provide the logically and factually related information of (a) which Transaction Transformers were manufactured there; and (b) which portions and/or phases of the manufacturing process occurred at the facility.

- **Interrogatory No. 9**: Identify any other instances where a customer has complained that purchased transformers from USE that were defective or needed repairs from 2021 to present. For each instance You identify, provide the logically and factually related information of (a) the name of the customer; (b) a description of what the customer complained about, including the amount of money at issue as well as which products were allegedly defective or needed repairs; (c) whether You disputed the complaint; (d) if You disputed the complaint, the factual reason for why You disputed the complaint; (e) whether a lawsuit was filed; and (f) whether the issue was resolved and, if so, how.

- **Interrogatory No. 10**: Describe in detail Your "Quality Assurance and Quality Control program," pursuant to Section 23 of the Purchase Order. In providing this description, provide the logically and factually related information of the identification of documents showing testing, inspection, or other reports showing compliance with the program, identified by Bates label.

- **Interrogatory No. 11**: Describe in detail any work performed by subcontractors or non-USE personnel on the Transaction Transformers at any stage of the manufacturing or pre-delivery process. In providing this description, provide the logically and factually related information of the identification of all supporting documents by Bates label.

USE should be required to answer these interrogatories with a narrative response.  EV is entitled to test USE's defenses when it alleges that transformers were functional and tested in accordance with industry standards.  The requested information is proportional to the needs of this case.  That is particularly true in view of USE's attempt to blame EV for imposing its own standards and rejecting USE's industry expertise.  Dkt. No. 14 at 24, ¶ 4.

2. **Contention interrogatories to clarify USE's affirmative defenses and counterclaim (Interrogatories Nos. 2–6)**

The Federal Rules permit contention interrogatories. FED. R. CIV. P. 33(a)(2).   USE nonetheless refuses to provide basic information that will clarify the contentions underlying its affirmative defenses and breach-of-contract counterclaim.   Ex. C at 2–5 (objecting to "contention discovery prior to the close of discovery and the final pre-trial conference").   Instead, USE fails to state the factual or legal grounds for its positions, avoids providing a substantive answer, and references only a handful of documents that are not responsive.   *See id.*

USE cannot ignore the reality, however, that EV's interrogatories target specific allegations that USE itself pleaded in its answer, defenses, and counterclaim.   USE alleges, for example, that it delivered 38 transformers that "fully met the contract specifications and industry standards, were merchantable, and were fit for their intended use and purpose."  Dkt. No. 14 at 27, ¶ 8; *see also id.* at 20, ¶ 63 (alleging that USE "delivered working and compliant transformers").   According to USE, EV tried to "impose its own standards on the transformers," failed to "show deference to USE's expertise" and rejected "USE's attempts to educate [EV] on the applicable standards for the transformers."  Dkt. No. 14 at 24, ¶ 4.  USE further blames EV for denying USE an opportunity to inspect, repair, and replace the defective transformers.  Dkt. No. 14 at 27, ¶¶ 7.  These same allegations are repeated throughout USE's answer and are at the heart of USE's affirmative defenses.  *See, e.g.*, Dkt No. 14 at 23–24, ¶¶ 1–5, 7.

In a dispute of this nature, USE has no legitimate basis to withhold basic, relevant information about its contentions:

- **Interrogatory No. 2**: Identify the status of each Transaction Transformer at the time of Your delivery to Energy Vault. For each Transaction Transformer, provide the logically and factually related information of (a) whether You contend the Transaction Transformer is functional and operational; (b) whether you contend that the Transaction Transformer met the specifications and requirements set forth in the Purchase Order;

(c) the factual basis for your contention, and (d) identify by Bates label all documents in support of Your assertion.

- **Interrogatory No. 3**: Provide the factual basis for Your contention that 38 out of 40 Transaction Performers "fully met the contract specifications and industry standards, were merchantable, and were fit for their intended use and purpose," as stated in Your Counterclaim (Dkt. 14 ¶ 8). In providing this factual basis, please also provide the logically and factually related information of all documents—identified by Bates label—that support Your contention.

- **Interrogatory No. 4**: For each Transaction Transformer, identify all specifications that You contend apply to the transformer. For each specification You contend applies, identify by Bates label all documents supporting Your contention that the specification applies.

- **Interrogatory No. 5**: For each Transaction Transformer, identify all performance standards, including but not limited to ANSI, NEMA, IEEE, and NETA standards and/or testing criteria, that You contend apply to the transformer. For each performance standard You contend applies, identify by Bates label all documents supporting Your contention that the performance standard applies.

- **Interrogatory No. 6**: If You contend that the Proposal and Purchase Order called for different specifications or standards for the Transaction Transformers, provide the factual basis for this contention. In providing the factual basis, provide the logically and factually related information of (a) identify the specification or standards under the Proposal and Purchase Order; (b) explain how and why these specifications and standards conflict; (c) whether You contend that the Transaction Transformers met either set of conflicting specifications or standards; and (d) identify by Bates label any document supporting this contention.

Although USE appears to rely on Rule 33(d) when referring to a handful of documents in lieu of a narrative response, the documents cited by USE fail to offer sufficient clarity about USE's contentions and are at times nonresponsive.  For example, Interrogatory No. 2 requests USE's position on whether it contends each transformer is operational, whether they met specifications, and why they met specifications.  USE's answer merely refers to: (i) EV's letter identifying certain defects in USE's transformers; (ii) USE's draft letter in response to that letter; and (iii) an email from USE certifying that certain standards were met.  Ex. C at 3.  But that non-answer leaves the

bulk of the interrogatory unaddressed, including USE's reasons for contending that the transformers fully met the specifications in the Purchase Order.

Likewise, as another example, Interrogatory No. 4 requests an identification of the standards that USE contends are applicable to the transformers.  In its answer, USE cites various correspondence between the parties, which includes discussion of issues raised by EV about certain specifications.  Ex. C at 4.  This sort of answer does not identify the relevant specifications at issue, is nonresponsive, and only serves to further obfuscate the issues.

Indeed, during a meet-and-confer, USE acknowledged that the interrogatories called for a narrative response that USE still has not provided in its supplemental answers.  Ex. B.  All told, these simple contention interrogatories are allowed by the Rules, and USE should be required to provide a complete answer.

**B.**      **USE has not produced relevant documents in connection with EV's interrogatories (RFP Nos. 15–19).**

EV served requests for production relating to the interrogatories that USE has failed to answer.  In response, USE acknowledges that there are outstanding documents that have not been produced.  Ex. D at 11–13 (stating that USE is "[w]aiting for additional input from client").

USE promised to produce these documents by June 7, 2024 during the meet-and-confer between the parties.  *See* Ex. B. While USE has served additional documents, this production seems to omit relevant documents responsive to RFP Nos. 15–19.  USE has not served amended responses that indicate otherwise.  Accordingly, the Court should order that USE produce these documents.

**C.**      **USE has not provided metadata for highly relevant documents.**

During the meet-and-confer, EV highlighted the significance of metadata for different versions of Purchase Orders produced by USE.  In interrogatory answers, USE contends that "[t]here

8

are 2 Purchase orders with the same number, one dated 9/13/2022 and another with the same number, corrected after the fact, but with the same date in the document, but was saved in [USE's] records 11/17/2022." *See* Ex. C at 2.

EV is entitled to metadata that confirms when USE saved the competing versions of the Purchase Order. *See* Ex. E, RFP Instructions at 4 (Instruction No. 9 requesting metadata). Yet, despite agreeing to re-produce documents in native form, USE has not produced the requested information. The Court should therefore order USE to provide metadata for all documents.

## CONCLUSION

For the reasons above, EV respectfully asks the Court to overrule USE's objections and compel complete responses to Interrogatory Nos. 2–11, compel a document production in response to RFP Nos. 15–19, and compel the production of metadata for all documents.

9

Date: July 1, 2024

AHMAD, ZAVITSANOS & MENSING PLLC

*/s/ Edward B. Goolsby*
Todd Mensing, attorney-in-charge
Texas State Bar No. 24013156
Edward B. Goolsby
Texas Bar No. 24092436
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
tmensing@azalaw.com
egoolsby@azalaw.com

ATTORNEYS FOR PLAINTIFF
ENERGY VAULT, INC.

10

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 1, 2024, I served a copy of the foregoing document on all counsel of record via email.

/s/ *Edward B. Goolsby*
Edward B. Goolsby

**<u>CERTIFICATE OF CONFERENCE</u>**

I hereby certify that on conferred with Defendant's counsel, Michael Whitticar, via email on May 21, 2024, and via telephone on May 24, 2024, regarding the deficient discovery responses. Mr. Whitticar confirmed that he would complete any supplements to these responses and to Defendant's document production by June 7, 2024. However, that day has come and gone, and Defendant has failed to address the deficiencies Plaintiffs raised.

/s/ *Edward B. Goolsby*
Edward B. Goolsby

11