IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| ENERGY VAULT, INC., | § § § | |
| *Plaintiff,* | § | |
| v. | § § | Civil Action No. 4:23-cv-00047 |
| UNITED STANDARD ELECTRIC, LLC, | § § § | |
| *Defendant.* | § | |

**PLAINTIFF ENERGY VAULT, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................. 2

    A. Energy Vault Issued a Purchase Order That Forms the Basis of the Contract. ...... 2

    B. USE Confirmed Acceptance of the Purchase Order. .............................................. 4

III. SUMMARY JUDGMENT STANDARD ........................................................................ 6

IV. ARGUMENT .................................................................................................................... 7

    A. The Purchase Order Is a Valid and Enforceable Contract as a Matter of Law. ...... 8

    B. USE's Counterclaim Fails as a Matter of Law Because It Relies on a Contract That The Parties Never Entered. ........................................................................... 12

V. CONCLUSION .............................................................................................................. 14

# **TABLE OF AUTHORITIES**

**CASES**

*Amedisys, Inc. v. Kingwood Home Health Care, LLC*,
   437 S.W.3d 507 (Tex. 2014) ............................................................................................... 13

*Avialae S De RL De CV v. Cummins Inc.*,
   472 F. Supp. 3d 340 (W.D. Tex. 2020) ................................................................................. 8

*Axelson, Inc. v. McEvoy-Willis, a Div. of Smith Int'l (N. Sea), Ltd.*,
   7 F.3d 1230 (5th Cir. 1993) ................................................................................................... 8

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 106 S.Ct. 2548 (1986) .................................................................................... 6

*Farah v. Mafrige & Kormanik, P.C.*,
   927 S.W.2d 663 (Tex. App. 1996) ........................................................................................ 7

*Gulf States Utilities Co. v. NEI Peebles Elec. Prod., Inc.*,
   819 F. Supp. 538 (M.D. La. 1993) ........................................................................................ 8

*Huckaba v. Ref-Chem, L.P.*,
   892 F.3d 686 (5th Cir. 2018) ........................................................................................... 7, 11

*In re Capco Energy, Inc.*,
   669 F.3d 274 (5th Cir. 2012) ............................................................................................. 7, 9

*McClure v. Boles,*
   490 F.App'x 666 (5th Cir. 2012) ........................................................................................... 7

*Meru v. Huerta*,
   136 S.W.3d 383 (Tex. App. 2004) ........................................................................................ 7

*Mullins v. TestAmerica, Inc.*,
   564 F.3d 386 (5th Cir. 2009) ........................................................................................... 7, 12

*Perez v. Lemarroy*,
   592 F.Supp.2d 924 (S.D. Tex. 2008) .................................................................................. 11

*Petras v. Criswell,*
   248 S.W.3d 471 (Tex. App. 2008) ........................................................................................ 7

**Rules**
FED. R. CIV. P. 56(a) ..................................................................................................................... 6

## I.     INTRODUCTION

In 2022, Energy Vault, Inc. ("Energy Vault"), a global energy storage company, purchased 40 electrical transformers for an energy power project in Fort Stockton, Texas.  Energy Vault provided Defendant United Standard Electric, LLC ("USE") with specific technical requirements for these transformers through a Purchase Order that USE accepted without modification.

Energy Vault sued in November 2023 after the transformers that USE delivered proved to be defective and failed to perform as promised.  As relevant to this summary judgment motion, Energy Vault asserted a breach of contract claim and USE countered with its own breach of contract counterclaim.  Among other things, USE contends that the Purchase Order that Energy Vault seeks to enforce is not the parties' contract, despite USE's accepting the Purchase Order without objection and communicating internally about the Purchase Order as the document governing the transaction.

USE's position is a kitchen-sink effort to rewrite the parties' contract negotiations and avoid the terms and conditions of Energy Vault's Purchase Order.  The undisputed facts show that USE accepted the Purchase Order without objection and delivered the types of transformers that Energy Vault requested.  Internal communications further confirm that USE understood that the Purchase Order (along with the provisions within) formed the basis of the parties' contract.  Yet now, through theories concocted during litigation, USE seeks to undermine the binding nature of the terms that it followed during the transaction.

In the same manner, USE's breach-of-contract counterclaim fails as a matter of law because it pleads the existence of a contract into which the parties never entered.  The facts demonstrate that the Purchase Order, complete with Energy Vault's terms and conditions, was the operative contract.  USE's efforts to manufacture a different set of contractual obligations cannot stand.

As a result, Energy Vault moves for partial summary judgment because there is no triable issue of fact on key elements of Energy Vault's breach-of-contract claim and USE's counterclaim.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.     Energy Vault Issued a Purchase Order That Forms the Basis of the Contract.

1.     On August 26, 2022, USE submitted a proposal to sell Energy Vault several electrical transformers, many of which were quoted for the Jupiter St. Gall project, located in Fort Stockton, Texas.  Ex. C at USE/EV000767–73 ("USE's Proposal").  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id.* at USE/EV000771; Ex. B ("Ladwa Decl.") ¶ 5.

2.     In response, Energy Vault issued a written purchase order dated September 13, 2022 ("Purchase Order"), attached to this motion as Exhibit D.  The Purchase Order itemized a smaller selection of the transformers originally quoted by USE, for a total of $3,830,686.00.



Ex. D at 1 (redline added); *see also* Ex. C at USE/EV000774–80 (███████████████ ███████████████████████); Ladwa Decl. ¶¶ 6–7.

3.      On pages 2 through 6 of the Purchase Order, Energy Vault set forth the terms and conditions that would govern the transaction, including an express rejection of the terms in USE's Proposal. Purchase Order at 2–6. As the unambiguous language makes clear, USE's acceptance of the Purchase Order required full compliance with Energy Vault's own terms and conditions.

3

> **1. EFFECT OF ACCEPTANCE.**
> By acceptance of this Purchase Order and/or commencing performance hereunder, Seller agrees to comply fully with the terms and conditions hereof. All previous offers by Seller are hereby rejected. Purchaser shall not be bound by terms additional to or different from those contained in this Purchase Order that may appear in Seller's quotations, acknowledgements, invoices, or in any other communication from Seller unless such terms are expressly agreed to in a writing signed by Purchaser. Acceptance of materials or services, payment or any inaction by Purchaser shall not constitute Purchaser's consent to or acceptance of any such terms. Seller shall be bound to the Purchaser to the same extent, and in the same manner as Purchaser is bound to Owner in the Prime Contract to the extent the Prime Contract applies to the Seller's work as described herein.

Ex. D at 2 (highlighting added); *see also* Ladwa Decl. ¶¶ 9–10.

4.      To eliminate any doubt, the Purchase Order specified that it constituted the parties' entire understanding and stated that it "supersedes any prior **proposals**, understandings, correspondence, and/or agreements." Purchase Order at 6, § 27.1 (emphasis added); *see also* Ladwa Decl. ¶ 11.

      **B.**     **USE Confirmed Acceptance of the Purchase Order.**

5.      USE provided a one-page written confirmation of its acceptance on November 29, 2022, listing ███████████████████████ for the same transformers described in the Purchase Order.

4



Ex. C at USE/EV000780 (highlighting and redline added); *see also* Ladwa Decl. ¶ 12.

6. USE's confirmation and acceptance did not raise objections to any of Energy Vault's terms and conditions. *Id.*

7. USE ultimately delivered 40 transformers to Energy Vault, consistent with the types of transformers itemized in both the Purchase Order and USE's written confirmation. Ladwa Decl. ¶ 12.[1] Energy Vault did not buy the remaining 41 transformers that were originally quoted in USE's Proposal. Ladwa Decl. ¶¶ 7, 13.[2]

---

[1] *See also* Ex. C at USE/EV000774 (38 transformers rated at 3010 kVA and 2 transformers rated at 1250 kVA); *id.* at USE/EV000780 (same); Ex. E at USE/EV001792 (USE's shipping plan for 38 transformers rated at 3010 kVA and 2 transformers rated at 1250 kVA).
[2] *See also* Ex. C at USE/EV000767–771 (USE's Proposal quoting purchase of transformers rated at 2500 kVA, 4400 kVA, 4000 kVA, and 500 kVA); Ex. E at USE/EV001792 (shipping plan includes only 3010 kVA and 1250 kVA transformers).

5

8. Internal communications confirm that USE understood that the Purchase Order was the governing document for the transaction. For instance, USE has produced ███████ ███████████████████████████████████████████████████ *E.g.*, Ex. C at USE/EV000766; Ex. F at USE/EV0001084–91.

9. After the lawsuit was filed in January 2024, USE continued to recognize that the Purchase Order was the operative document, as evidenced by ███████████████████ ███████████████████████████████████████████████████ Ex. G at USE/EV000150–56.

10. Even so, USE has contended during this litigation that it never accepted the terms of the Purchase Order. *See* Ex. H, USE's 2d. Suppl. Ans. to Pl.'s 1st Set of Interrogatories, at 1–2. Instead, USE alleges that it received an alternate version of the Purchase Order that excluded the pages with terms and conditions. *Id.* None of the emails produced by USE references or attaches this alternate version.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when a movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553 (1986). The burden of proof in a summary judgment proceeding is on the same party that would bear the burden of proof at trial. *Id.* at 324. Parties moving for summary judgment must identify "each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought." FED. R. CIV. P. 56(a) (emphasis added).

After the movant has shown there is no genuine issue of material fact, the burden shifts to the nonmoving party which must designate specific facts showing that there is a genuine issue for trial. *Id.* A nonmovant may not overcome summary judgment with conclusional allegations,

6

unsupported assertions, or presentation of only a scintilla of evidence. *McClure v. Boles,* 490 F.App'x 666, 667 (5th Cir. 2012) (per curiam).

## IV. ARGUMENT

"The first necessary element for a successful breach of contract claim is a valid, enforceable contract." *Petras v. Criswell,* 248 S.W.3d 471, 477 (Tex. App. 2008); *see also Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). A valid and enforceable contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012)). Whether a particular agreement constitutes an enforceable contract is generally a question of law. *Meru v. Huerta*, 136 S.W.3d 383, 390 (Tex. App. 2004) (citing *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 678 (Tex. App. 1996)).

Given these requirements under Texas law, Energy Vault is entitled to judgment as a matter of law on two key issues. First, the undisputed facts prove that the Purchase Order, which forms the basis of Energy Vault's breach-of-contract claim, is a valid and enforceable contract to which USE is bound. USE cannot raise a genuine issue of material fact to challenge its formation. Second, USE's counterclaim fails because the alleged contract it pleads specifically disclaims the Purchase Order's binding terms. But the record shows that USE accepted the terms of the Purchase Order, thus demonstrating as a matter of law that the parties never agreed to the contract that forms the basis of USE's counterclaim.

A.      **The Purchase Order Is a Valid and Enforceable Contract as a Matter of Law.**

USE contends that the terms and conditions in the Purchase Order do not apply to this transaction. But USE is wrong as a matter of law. The requirements for contract formation under Texas law are fully satisfied here.

**(1) Energy Vault's Offer**. An offer is "an act that leads the offeree reasonably to believe that assent (i.e., acceptance) will conclude the deal." *Axelson, Inc. v. McEvoy-Willis, a Div. of Smith Int'l (N. Sea), Ltd.*, 7 F.3d 1230, 1232–33 (5th Cir. 1993). And courts across the country have acknowledged that a purchase order issued by a buyer to a seller is often "the first document having the legal attributes of an offer."[3]

The Purchase Order that Energy Vault issued is no different. It listed the 40 transformers that it sought to purchase from USE and set forth Energy Vault's terms and conditions. Purchase Order at 1–6; *see also* Ladwa Decl. ¶¶ 6–7. Under the terms of the Purchase Order, "[b]y acceptance of this Purchase Order and/or commencing performance hereunder, [USE] agrees to comply fully with the terms and conditions hereof." Purchase Order at 2, § 1 ("Effect of Acceptance"). The Purchase Order also expressly rejected all previous offers and specified that it constituted the parties' entire understanding, "supersed[ing] any prior proposals, understandings, correspondence, and/or agreements." *Id.*; Purchase Order at 6, § 27.1; *see also* Ladwa Decl. ¶¶ 9–11.

**(2) USE's Acceptance**. USE understood that the Purchase Order contained an offer that could be accepted. It responded to Energy Vault with ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. C at USE/EV000780; Ladwa Decl. ¶ 12. This

---

[3] *Avialae S De RL De CV v. Cummins Inc.*, 472 F. Supp. 3d 340, 347 (W.D. Tex. 2020), *aff'd*, No. 23-50376, 2024 WL 1461947 (5th Cir. Apr. 4, 2024) (citing *Gulf States Utilities Co. v. NEI Peebles Elec. Prod., Inc.*, 819 F. Supp. 538, 549 (M.D. La. 1993)).

8

confirmation ▮

▮.⁴  *Compare* Ex. C at USE/EV000780 *with* Purchase Order at 1.  USE then stated that it ▮ Ex. C at USE/EV000780 (emphasis added); *see also* Ladwa Decl. ¶ 12.  There is no genuine dispute that USE intended to accept specific terms within Energy Vault's offer.

**(3) and (4) Meeting of the Minds and Consent to Terms**.  Under Texas law, courts determine a meeting of the minds "based on the objective standard of what the parties said and did and not on their subjective state of mind."  *In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012).  Here, USE ▮.  Purchase Order at 1; Ex. C at USE/EV000780.  USE cannot reasonably dispute that a meeting of the minds occurred on these terms.

The remaining disputes involve USE's contention that it is not bound by ***any*** of the terms and conditions on Pages 2 to 6 of the Purchase Order.  *See* Ex. H at 1–2.  USE disclosed two grounds supporting this position in discovery, but neither creates a genuine issue of material fact.

First, USE contends that the governing Purchase Order is a different version that did not attach terms and conditions.  *Id.*  But ***none*** of the documents produced shows that the parties have ever treated this alternate version with a different, lower price as the governing document for this transaction.  In fact, USE's internal correspondence consistently references the correct version of

---

⁴ While the Purchase Order includes separate line items for "Price addition to change from mineral oil to natural ester fluid," the subtotals in USE's confirmation use the same pricing and merely add these price additions to the transformer line items.  *Compare* Purchase Order at 1 *with* Ex. C at USE/EV000780.

9

the Purchase Order that Energy Vault seeks to enforce in this case. *E.g.*, Ex. C at USE/EV000766, USE/EV000774–779; Ex. F at USE/EV0001082–91. For example, ███████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████. Ex. F at USE/EV0001084–85. USE's clear presumption in making these arguments was that the Purchase Order included terms and conditions, confirming that USE understood them to be binding. Consistent with that understanding, ███████████████████████████████████████████████. Ex. F at USE/EV001084–91. In yet another example, ███████████████████████████ ███████████████████████████████████████████████. Ex. G at USE/EV000150–56.

This repeated internal acknowledgment of the correct Purchase Order confirms that there was a meeting of the minds about its terms and conditions. USE knew these terms were binding and wanted to Energy Vault to pay the price increase listed in the Purchase Order that Energy Vault now seeks to enforce. It should not be permitted to manufacture a fact issue, after the fact, by pointing to a different version of the Purchase Order. All of the evidence demonstrates that it was aware of the correct version.

Second, USE claims that the terms from USE's Proposal govern the transaction. This is an unsupported attempt to ignore the actual contract between the parties. USE's Proposal itself stated, ███████████████████████████████████████████████████████████████ ███████████████████████████ Ex. C at USE/EV000772. In response, Energy Vault issued a Purchase Order that did not satisfy USE's terms for acceptance. Rather, the Purchase Order opted to buy only a portion of the transformers originally quoted by USE and requested transformer specifications that included natural ester fluid, rather than mineral oil. Ladwa Decl. ¶¶ 7, 13.

10

Under the express language of USE's own proposal, this did not constitute acceptance: ███

███

███  *Id.*

Put simply, it was USE that confirmed acceptance of the Purchase Order and established the mutual assent to be bound by its terms and conditions. There is ***no*** evidence to support USE's contrary claim that Energy Vault agreed to be bound by the terms in USE's proposal instead. USE should not be allowed to manufacture a fact issue where there is none.

**(5)** **Execution and Delivery of the Contract with Intent That It Be Mutual and Binding**. Under Texas law, "[s]ignatures are not required '[a]s long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract.'" *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (quoting *Perez v. Lemarroy*, 592 F.Supp.2d 924, 930–31 (S.D. Tex. 2008)).

The evidence shows, as a matter of law, that the parties did not require signatures to enter a binding contract. Instead, the language of the Purchase Order provided that the underlying terms and conditions were binding even if USE commenced performance under the Purchase Order without providing a written acceptance.

> 1. EFFECT OF ACCEPTANCE.
> By acceptance of this Purchase Order and/or commencing performance hereunder, Seller agrees to comply fully with the terms and conditions hereof. All previous offers by Seller are hereby rejected. Purchaser shall not be bound by terms additional to or different from those contained in this Purchase Order that may appear in Seller's quotations, acknowledgements, invoices, or in any other communication from Seller unless such terms are expressly agreed to in a writing signed by Purchaser. Acceptance of materials or services, payment or any inaction by Purchaser shall not constitute Purchaser's consent to or acceptance of any such terms. Seller shall be bound to the Purchaser to the same extent, and in the same manner as Purchaser is bound to Owner in the Prime Contract to the extent the Prime Contract applies to the Seller's work as described herein.

Purchase Order at 2 (highlighting added); *see also* Ladwa Decl. ¶¶ 9–10.

11

In short, no genuine fact dispute exists about the execution and delivery of the contract because there is no evidence to show that the parties required a signed agreement.

B.  **USE's Counterclaim Fails as a Matter of Law Because It Relies on a Contract That The Parties Never Entered.**

The elements for a breach-of-contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). USE cannot prevail on its counterclaim because it cannot show that the existence of the contract it pleads. For the reasons discussed above, the undisputed facts establish that the Purchase Order, together with its terms and conditions, formed a valid and enforceable contract.

Contrary to that binding agreement, USE alleges that "[t]he parties' contract consists of USE's Proposal, the USE Proposal Terms and Conditions, and—*only to the extent consistent therewith—the Energy Vault Purchase Order*." Dkt. No. 14 at 26, ¶ 5 (emphasis added). This is the only contract alleged by USE and it fails to meet the requirements for contract formation under Texas law.

To begin, there was no acceptance of USE's Proposal that formed a binding contract. USE's Proposal included six different types of transformers. Ladwa Decl. ¶¶ 4–5. More than half of these transformers were quoted for other Energy Vault projects, rather than the Jupiter St. Gall project. *Id.* As a result, ███████████████████████████████████████ ███████████████████████████████████████████████████████. Ex. C at USE/EV000771; Ladwa Decl. ¶ 5. Moreover, the Purchase Order included changes to the transformer specifications that increased the price of the order by $478,116.00 for the 38

12

transformers rated at 3010 kVA, and by $17,480.00 for the 2 transformers rated at 1250 kVA. Ladwa Decl. ¶ 8.

Given that the Purchase Order did not match even the essential price terms of USE's offer, it could not have constituted an acceptance. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 513–14 (Tex. 2014) ("[A]n acceptance may not change or qualify the material terms of the offer, and an attempt to do so results in a counteroffer rather than acceptance."). Indeed, the plain language of the Purchase Order shows that it rejected USE's previous offer and required compliance with Energy Vault's own binding terms. *See* Purchase Order at 2, § 1; *see also* Ladwa Decl. ¶¶ 9–11.

In the same manner, USE cannot show that Energy Vault consented to the terms of USE's Proposal, as required by Texas law. Even under USE's own terms, Energy Vault's submission of a Purchase Order constituted a counteroffer, not an acceptance, because it included five pages of new terms and conditions. USE's Proposal explicitly stated, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. C at USE/EV000772. And the Purchase Order submitted by Energy Vault did not simply accept USE's Proposal. Instead, the Purchase Order stated that the terms "supersede[d] any prior proposals, understandings, correspondence, and/or agreements." Purchase Order at 6, § 27.1; *see also* Ladwa Decl. ¶ 11.

USE has pleaded no other contract, so there are no triable fact issues as to the existence of a valid contract. The evidence demonstrates that the contract alleged by USE cannot be reconciled with the terms of the Purchase Order. Dkt. No. 14 at 26, ¶ 5 (alleging that the Purchase Order is only binding "only to the extent consistent" with USE's Proposal and USE's own underlying terms and conditions). Because the undisputed facts negate the first element of a breach of contract claim

13

under Texas law, Energy Vault is thus entitled to judgment as a matter of law on USE's counterclaim.

## V. CONCLUSION

For all of these reasons, Energy Vault asks this Court to enter summary judgment that (a) the Purchase Order, attached as Exhibit D to this motion, is a valid and enforceable contract between Energy Vault and USE; and that (b) USE's breach of contract counterclaim fails as a matter of law.

Date: October 4, 2024

AHMAD, ZAVITSANOS & MENSING PLLC

/s/ Edward B. Goolsby
Todd Mensing, attorney-in-charge
Texas State Bar No. 24013156
Edward B. Goolsby
Texas Bar No. 24092436
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
tmensing@azalaw.com
egoolsby@azalaw.com

ATTORNEYS FOR PLAINTIFF
ENERGY VAULT, INC.

## **CERTIFICATE OF SERVICE**

 I hereby certify that on October 4, 2024, I served a copy of the foregoing document on all counsel of record via email.

*/s/ Edward B. Goolsby*
Edward B. Goolsby
