

Exhibit No. D

# Purchase Order

#PO000778

9/13/2022

| **Purchaser** | **Shipping Address** | **Vendor** |
|---|---|---|
| Energy Vault | Energy Vault | United Standard Electric LLC |
| 4360 Park Terrace Drive, Suite 100 | null | Sandy OR 97005 |
| Westlake Village CA 91361 | | United States |
| United States | | |

| Quantity | Item | Rate | Amount |
|---|---|---|---|
| 38 | Project: Jupiter Power - St Gall<br>1 each, 3010 kVA 3 Phase Pad mounted, HV 34500/19920Y – LV 690D, 60 HZ, 5 position tap changer 2-2.5% FCAN and 2-2.5% FCBN, Al windings, Mineral oil, 65° C rise, ONAN, 45° C max ambient., dead front loop feed, pad mounted | $84,670.00 | $3,217,460.00 |
| 2 | Project: Jupiter Power - St Gall<br>1 each, 1250 kVA 3 Phase Pad mounted, HV 34500/19920Y – LV 400/230Y, 60 HZ, 5 position tap changer 2-2.5% FCAN and 2-2.5% FCBN, Al windings, Mineral oil, 65° C rise, ONAN, 30° C max ambient., dead front loop feed, pad mounted | $58,815.00 | $117,630.00 |
| 38 | 3010kVA. Price addition to change from mineral oil to natural ester fluid | $12,582.00 | $478,116.00 |
| 2 | 1250kVA. Price addition to change from mineral oil to natural ester fluid | $8,740.00 | $17,480.00 |

| | |
|---|---|
| **Subtotal** | $3,830,686.00 |
| **Tax Total** | $0 |
| **Total** | $3,830,686.00 |

Payment Terms: Payment terms: 25% down payment Net 30 with every delivery (subject to credit approval)
Incoterms:
Delivery Notes:
Notes:


PO000778

Please note invoices that do not report the correct PO number will not be processed.
Email US invoices to: accounting.us@energyvault.com for processing.
Email EU invoices to: accounting@energyvault.ch for processing.

1 of 6

ENERGYVAULT000334

1. EFFECT OF ACCEPTANCE.
By acceptance of this Purchase Order and/or commencing performance hereunder, Seller agrees to comply fully with the terms and conditions hereof. All previous offers by Seller are hereby rejected. Purchaser shall not be bound by terms additional to or different from those contained in this Purchase Order that may appear in Seller's quotations, acknowledgements, invoices, or in any other communication from Seller unless such terms are expressly agreed to in a writing signed by Purchaser. Acceptance of materials or services, payment or any inaction by Purchaser shall not constitute Purchaser's consent to or acceptance of any such terms. Seller shall be bound to the Purchaser to the same extent, and in the same manner as Purchaser is bound to Owner in the Prime Contract to the extent the Prime Contract applies to the Seller's work as described herein.

2. INVOICING.
2.1 Submit invoices for each shipment on or before the 25th of each month. Invoices must be submitted with all supporting documentation attached including but not limited to bills of lading, freight receipts, delivery tickets, etc. Each invoice shall identify the Purchase Order by number.

2.2 Claims for additional items not made a part of this Purchase Order will not be allowed nor payments made therefor, unless an additional Purchase Order is issued by an authorized representative of the Purchaser.

3. PAYMENT.
3.1 Payment terms are 100% of material value as approved by the Owner, or verified delivery prior to the 25th of each month. All prices, specifications, and other data made a part of this Purchase Order are not subject to change unless agreed to in writing by authorized agents of the Purchaser and the Seller. All payments by Purchaser under this Purchase Order are conditioned upon (i) receipt, inspection and acceptance by Purchaser of goods conforming to this Purchase Order and (ii) receipt of payment by Purchaser from the Owner. Receipt of such payment by Purchaser from Owner is a condition precedent to all payments to Seller. Seller is expressly assuming the risk of non-payment by the Owner.

3.2 Purchaser shall be entitled to withhold payment to Seller to the extent as may be necessary in the Purchaser's opinion to protect the Purchaser from loss for which the Seller is responsible, because of amounts withheld by the Owner due to this Purchase Order, defective work not remedied, third party claims filed or reasonable evidence indicating the probability of filing of such claims, reasonable evidence the Seller's Work cannot be completed for the unpaid balance of the Purchase Order, failure of Seller to make payments properly to subcontractors or suppliers, evidence that the Seller's Work will not be completed on time and/or repeated failure to comply with the requirements of this Purchase Order.

4. SHIPPING.
4.1 The times set forth for delivery are of the essence, and unless a delivery date is otherwise specified herein, all deliveries shall conform to the date or dates specified from time to time by Purchaser's representative. Seller shall only be entitled to and granted an extension of time if Purchaser is so entitled and granted under the Prime Contract. Such time extension shall be Seller's sole remedy for such delays. Seller shall be liable to Purchaser for all damages which Purchaser may sustain by reason of any delays caused by or resulting from Seller.

4.2 Upon Purchaser's request, Seller shall provide, in electronic format, a materials list covering all goods to be shipped as separate components, assemblies, sub-assemblies or as spares. The materials list shall contain (i) Purchaser's tag number; (ii) Seller's parts number or catalog number; (iii) Seller's name and nameplate description; (iv) this Purchase Order number; (v) the quantity shipped; (vi) the delivery date; (vii) if the shipment includes spare parts, a statement as to whether spare parts are necessary for start-up; and (viii) a description of any required preventative maintenance and/or storage requirements.

4.3 Purchaser must be given notice of routing before Seller forwards shipments and advised of the shipping point and initial carrier. Carrier must be directed that 24 hours notice by electronic mail, facsimile or telephone to Purchaser's jobsite prior to delivery is required.

4.4 Seller will notify Purchaser by electronic mail, facsimile or telephone, five (5) days prior to the time equipment is ready for shipment. All shipping notification must be confirmed in writing.

4.5 Identification of the goods ordered herein shall occur at the moment this Purchase Order is accepted by Seller. Risk of loss shall pass to the Purchaser at the time that conforming goods are actually received and accepted by the Purchaser. Title to all goods shall pass to the Purchaser, or Owner, if so required under the Prime Contract on the earlier of invoicing for such goods or delivery to the project site.

4.6 No charge will be allowed for packing, boxing, or cartage unless fully and separately itemized in the Purchase Order. Damage to any item or items not packed to insure proper protection to same will be charged to Seller in the event a claim for such damage is denied by the carrier on the basis of inadequate packing and protection.


PO000778

Please note invoices that do not report the correct PO number will not be processed.
Email US invoices to: accounting.us@energyvault.com for processing.
Email EU invoices to: accounting@energyvault.ch for processing.

2 of 6

ENERGYVAULT000335

5. SUBMITTALS.
5.1 The Seller shall prepare and submit to the Purchaser shop drawings and/or other submittals to describe completely the details of construction of the Seller's Work, pursuant to the Schedule set forth on Exhibit 5.2 Submittal packages shall include a copy of all applicable specifications sections with all compliance or deviations clearly noted for each. Review and approval of submittals by Purchaser and/or the Owner shall not relieve Seller of its obligation to perform Seller's Work in strict accordance with Plans, Specifications, and other Contract Documents, nor of its responsibility for the proper matching and fitting of the Seller's Work with contiguous work. Seller shall provide the number of copies of the submittals to the Purchaser as requested.
5.2 "Approved" and "Approved as Noted" submittals returned to Seller that have comments that need to be addressed shall be addressed within 48 hours.

5.3 Upon receipt of a submittal marked "Rejected" or "Revise and Resubmit" Seller shall immediately take all necessary steps to revise its submittal in accordance with Purchaser's comments and the Contract Documents. Submittals must be resubmitted to Purchaser within 48 hours.

5.4 Any resubmitted information shall clearly identify the revisions by footnote or by a form of backcircle, with a revision block update, as appropriate upon receipt of a submittal marked "Returned for Corrections."
5.5 Seller must provide submittal data and operation and maintenance manuals in accordance with the Contract Documents.

6. INSTALLATION.
In the event that the goods ordered hereunder require, in connection with the
installation thereof, the services of a supervisor, expert, or other employee connected with or employed by Seller, Seller agrees to furnish the same, without additional charge. It is understood that such individual shall not, while performing its duties with respect to the goods covered by this Purchase Order, be deemed an agent or employee of the Purchaser and the Seller will assume full responsibility for all acts and omissions of such party.

7. INSPECTION.
Seller alone is responsible for the quality of Seller's Work and for the proper inspection
of Seller's Work. Prior to Purchaser's acceptance, the goods shall be subject to inspection by Purchaser, the Owner, any others granted such right in the Prime Contract and such third parties as may be required by applicable law. Seller shall obtain the same rights to inspect as provided in this paragraph in all of Seller's subcontractor and supplier agreements. Where shop inspection is required by the Purchaser or Owner, Seller shall notify Purchaser by electronic mail, facsimile or telephone at least fourteen (14) days prior to the date such items shall be ready for inspection. The initial inspections performed at Purchaser's facility or project site on receipt of material is a conditional acceptance and shall not waive the right of the Purchaser to reject the material containing or developing latent defects. Purchaser may also request and Seller shall provide upon such request, photos of work progression and/or inspections, periodic written progress reports, written verification of progress schedules, etc.

8. PERFORMANCE GUARANTEES.
Seller hereby guarantees that the materials, equipment and/or
systems furnished under this Purchase Order shall operate and perform as defined in the Contract Documents. Should the materials, equipment and/or systems fail to meet the required performance, Seller shall repair or replace, at Seller's expense, any/or all components, parts, materials, labor, supplies, tools, and consumables necessary to achieve the required level of performance. To the extent caused by the Seller, if the Work fails to meet the specified performance as defined in the Contract Documents, Seller shall be liable to Purchaser for all damages, including without limitation any Owner imposed liquidated or other damages, which Purchaser may sustain by reason of such failure to meet the specified performance standards.

9. PATENTS AND COPYRIGHTS.
Seller agrees to indemnify and hold harmless Purchaser and the
Owner and any other entity that Purchaser is obligated to indemnify and hold harmless in the Prime Contract, and their respective officers, agents, employees and vendees from any and all loss, expense, damage, liability, claims or demands, either at law or in equity, including attorney's fees for actual or alleged infringement of any patent, invention, design, trademark, or copyright arising from the purchase, use or sale of materials or articles required by the Purchase Order.

10. TERMINATION WITHOUT CAUSE.
Purchaser may terminate the Seller's work to be performed
under this order in whole or in part without cause at any time by written notice to the Seller. Purchaser shall pay to Seller for all materials provided to the Project under this Purchase Order that have been accepted by the Owner prior to the date of such termination, subject to receipt of payment by Purchaser from the Owner being a condition precedent to all payments by Purchaser. The foregoing is Seller's sole remedy for a termination without cause and Seller expressly waives any rights or claims to lost profits on that portion of Work so terminated.


PO000778

Please note invoices that do not report the correct PO number will not be processed.
Email US invoices to: accounting.us@energyvault.com for processing.
Email EU invoices to: accounting@energyvault.ch for processing.

3 of 6

ENERGYVAULT000336

11. DEFAULT.
Should Seller at any time fail, refuse, or neglect to supply, with promptness and diligence, in the proper order and as directed by the Purchaser, sufficient quantities of the proper quality materials purchased hereunder; or fail to furnish in a timely manner all samples, lists, drawings, cuts, schedules, etc.; or fail in the performance of any of the requirements herein contained, Purchaser may, after three (3) days written notice to Seller, procure any of the materials covered by this Purchase Order and deduct the cost of such materials, including procurement costs, plus any damages incurred by Purchaser as result of such default from any money due, or to become due, Seller. Purchaser may also terminate Seller's right to proceed hereunder and contract with any other persons, or person, to furnish such material. In the event of such termination of Seller's right to proceed, Seller shall not be entitled to receive any further payments until all of the materials covered in this Purchase Order have been delivered and accepted; at which time, if the unpaid balance of the amount to be paid exceeds the damages and expenses incurred by the Purchaser, including attorneys' fees and any court costs incurred, such excess shall be paid by Purchaser to Seller, but if such damages and expenses shall exceed such unpaid balance, Seller shall reimburse Purchaser for all excess of such damages and expenses over the unpaid balance. The rights and remedies granted to Purchaser herein shall be cumulative and are not intended to be in lieu of any legal right or remedy afforded by Federal, State, or local law that Purchaser may have against Seller for breach or default of this Purchase Order.

12. PRICE ADJUSTMENT.
The prices set forth in this Purchase Order are firm and not subject to adjustment or escalation.

13. LABOR DISPUTES.
Seller shall employ or contract with only such labor as will work harmoniously with other labor employed by or contracted with Purchaser. Seller agrees that whenever actual or potential labor dispute delays or threatens to delay the timely performance of this Purchase Order, Seller shall immediately give notice thereof to Purchaser and shall promptly take all reasonable steps to mitigate the impact of any such dispute.

14. LIENS.
Seller shall promptly pay all amounts due for labor, materials and equipment used in Seller's performance of this Purchase Order and shall furnish with each invoice completed unconditional lien and claim waivers and affidavits from Seller, amounting to 100% of the payment that was paid to Seller pursuant to the previous invoice and a conditional lien and claim waiver for the current payment request on forms acceptable to Purchaser and/or those required by the law of an applicable jurisdiction. In the event Seller's suppliers or subcontractors file any lien or claim relating to this Purchase Order, Seller shall indemnify, defend and hold harmless Purchaser and the Owner and shall commence to bond over such lien within five (5) days of notice from Purchaser and will diligently pursue the completion of the bonding process. Seller shall keep Purchaser informed daily through the bonding process and shall provide Purchaser with a copy of the bond and any required ancillary documents (including recorded copies of the same) within 24 hours of completion of the process. Purchaser reserves the right to pay any claims not timely bonded upon notice to Seller and shall be entitled to deduct all cost and expense thereof from Seller.

15. APPLICABLE LAW.
This Purchase Order including the validity, interpretation and performance under this Purchase Order shall be governed by the laws of the state where the Project is located without reference to their conflicts of laws.

16. WARRANTY.
The Seller warrants that all articles, material and work supplied by the Seller under this Purchase Order will be merchantable, fit for Purchaser's intended purposes, and free from defects in design, material and workmanship and will conform to the Contract Documents including the Specifications, Drawings, samples or other descriptions furnished or adopted by the Purchaser. Seller also warrants to Purchaser that services will be performed in a first class workmanlike manner consistent with industry standards. In addition, if material furnished contains one or more manufacturer's warranties, Seller hereby assigns such warranties to Purchaser. All warranties shall survive inspection, acceptance and payment. Seller agrees to repair or replace free of charge any part or parts which prove defective or which operate unsatisfactorily. Seller also guarantees that the items as specified in the Purchase Order are of sufficient size or capacity to perform as specified. Should the items not perform as guaranteed, Seller agrees to make all necessary alterations, repairs, and replacement free of charge including the cost to remove or correct work of others in order to perform the warranty work. If the defects or failure to function cannot be corrected, Seller agrees to promptly replace said items free of charge or to remove the items and refund the full purchase price. Such remedies shall be available to Purchaser in addition to all others afforded to it at law or equity. Seller agrees to promptly make good, without cost to Purchaser, any and all defects due to faulty materials which may appear within the guarantee or warranty period so established in the Contract Documents, and if no such period is stipulated in the Contract Documents, then such guarantees shall be for a period of two years from the date of completion and acceptance of the Project by the Owner.

17. CHANGES.
Purchaser may, at any time, make changes in this Purchase Order, consisting of additions, deletions, or other modifications that Purchaser may deem desirable. If such change causes a material increase in Seller's cost and/or time for performance, Seller shall so notify Purchaser in writing within ten calendar days from the date of Purchaser's notice of change or the period of time required for notification of change in the Owner agreement, whichever is shorter, and, upon Purchaser's concurrence with Seller's notice, an equitable adjustment in the Purchase Order Price and the time of performance shall be mutually agreed upon between the Parties. Notwithstanding the foregoing, Seller shall proceed as directed by Purchaser pending such mutual agreement. If such change causes a material decrease in Seller's cost or time for performance, Seller shall document the actual net change and submit to Purchaser for approval. No allowance shall be made to Seller for damages, including burden, overhead, and loss of anticipated profits, on a decrease in the Seller's Work. Agreement to any such adjustment shall constitute a waiver of all other claims by Seller arising out of the change. No change shall be effective in the absence of express written direction of Purchaser. Any and all such changes shall be evidenced by a Change Order to this Purchase Order, executed by Purchaser, and Seller agrees to promptly comply therewith.


PO000778

Please note invoices that do not report the correct PO number will not be processed.
Email US invoices to: accounting.us@energyvault.com for processing.
Email EU invoices to: accounting@energyvault.ch for processing.

4 of 6

ENERGYVAULT000337

18. DISPUTES.
18.1 To the extent a dispute is related to the Prime Contract, Seller and Purchaser shall follow the disputes provision established in the Prime Contract. Disputes not related to the Prime Contract are to be resolved by litigation in a court of competent jurisdiction in a place where the Project is located.

18.2 The prevailing party in any legal action (including arbitration, if required) between the parties relating to this Purchase Order shall recover from the other party reasonable legal costs, including attorneys' and consultants' fees, in connection with such action.

18.3 Pending resolution of any claim or dispute, and without prejudice to Seller's rights, Seller shall continue to perform as directed by Purchaser and Purchaser shall continue to pay any undisputed amounts.

19. INDEMNITY.
TO THE FULLEST EXTENT PERMITTED BY LAW, THE SELLER SHALL INDEMNIFY, DEFEND AND HOLD PURCHASER AND THE OWNER, AND ANY OTHER PARTY THAT PURCHASER HAS AGREED TO INDEMNIFY, DEFEND AND HOLD HARMLESS IN THE PRIME CONTRACT, FROM AND AGAINST ALL SUITS, CLAIMS, LOSSES OR DAMAGES THAT MAY BE BASED UPON ANY ALLEGED INJURY TO OR THE DEATH OF ANY PERSON OR DAMAGE TO PROPERTY OR ECONOMIC LOSS THAT MAY OCCUR OR THAT MAY BE ALLEGED TO HAVE OCCURRED RELATED TO THIS PURCHASE ORDER REGARDLESS OF WHETHER IT IS CAUSED IN PART BY THE ACTS, OMISSIONS OR NEGLIGENCE OF A PARTY INDEMNIFIED HEREUNDER. SELLER SHALL, AT ITS OWN COST AND EXPENSE, PAY ALL COSTS AND EXPENSES OF SUIT INCLUDING ATTORNEYS' FEES IN CONNECTION THEREWITH AND IF ANY JUDGMENT SHALL BE RENDERED AGAINST THE PURCHASER IN ANY SUCH ACTION OR ACTIONS THE SELLER SHALL SATISFY AND DISCHARGE THE SAME WITHOUT COST OR EXPENSE TO PURCHASER. PURCHASER SHALL BE ENTITLED TO SELECT COUNSEL OF ITS CHOOSING, SUBJECT TO SELLER'S REASONABLE APPROVAL, IN CONNECTION WITH ANY INDEMNITY OBLIGATION OWED TO PURCHASER BY SELLER PURSUANT TO THIS PARAGRAPH.

20. INSURANCE.
Seller shall provide evidence of insurance acceptable to Purchaser covering its obligations under this Purchase Order. Such insurance coverage shall include Commercial General Liability including Products/Completed Operation coverage with limits of not less than $1,000,000 per occurrence and $2,000,000 general aggregate/products completed operations aggregate; and Automobile liability coverage with limits of not less than $1,000,000. Such insurance coverage shall be evidenced by a Certificate of Insurance and shall name the Purchaser, the Owner as well as any additional entities required by the Prime Contract to be named as Additional Insured as Additional Insureds on all such insurance policies, and such additional insured coverage shall be primary and noncontributory to any other policies maintained by Purchaser or the Owner or such other named parties. The Commercial General Liability Policy additional insured coverage shall be provided on ISO endorsement form CG 20 26 07 04 or equivalent endorsement as determined and approved by Purchaser, unless otherwise limited by applicable law. If Seller's scope of work includes on-site services in connection with installation, additional insured endorsements CG 20 10 and CG 20 37, or equivalent endorsements providing coverage to the fullest extent allowed by law must be provided, unless otherwise limited by applicable law. These insurance policies shall include a Waiver of Subrogation in favor of the Purchaser and the Owner and any other entities required by the Prime Contract to receive a waiver of subrogation. Purchaser reserves the right to request additional coverage or endorsements as Purchaser may require based on the nature and scope of the goods and services being provided herein.
If Seller's operations include the transportation of any hazardous material, the Automobile Liability policy shall contain coverage for transportation of hazardous materials by endorsement CA 99 48 or its equivalent. The Automobile policy will attach a MCS-90 endorsement.
In addition, Seller shall maintain Workers' Compensation insurance with limits established by statute in the state where the services will be provided under this agreement. All Seller employees shall be covered under such policies, including employees who are sole proprietors, members or partners, whether or not required by applicable law. This insurance policy shall also include a Waiver of Subrogation in favor of the Purchaser and the Owner and any other entities required by the Prime Contract to receive a waiver of subrogation. All insurance requirements shall flow down to on-site suppliers and delivery entities of any tier and any flow down of these requirements does not relieve Seller of its obligation to provide the insurance required herein.

21. START-UP AND COMMISSIONING.
Seller agrees to provide all start-up services and commissioning requirements in accordance with all applicable Contract Documents.

22. SCHEDULE.
22.1 If Seller's work is not progressing as scheduled, Seller shall take appropriate corrective measures. In addition, Seller shall give Purchaser notice in writing of any delay or anticipated delay within three business days after the occurrence of the event giving rise to the delay or the anticipated delay. The notice to Purchaser shall include a description of and the source or cause of the delay or the anticipated delay and the actions Seller is undertaking to recover from or avoid the delay. If Seller fails to take steps that Purchaser determines are necessary to recover from or avoid the delay or fails to bring its performance into compliance with the requirements of this Purchase Order, Purchaser may direct Seller to accelerate its Work by whatever means Purchaser deems necessary, including, but not limited to, supplying additional labor, working overtime or additional shifts, and/or providing additional supervision and equipment, or shipping in a more costly manner as Purchaser may reasonably require, in order to recover and maintain the schedule. Supplier shall be responsible for all costs to accelerate its Work at its sole cost and expense.
22.2 Purchaser's receipt of Seller's notice of delay and/or Purchaser's directive to accelerate the work shall not constitute a waiver of any right or remedy available to Purchaser under this Purchase Order or at law or in equity, nor shall they be deemed a waiver of the requirements of this Purchase Order.


PO000778

Please note invoices that do not report the correct PO number will not be processed.
Email US invoices to: accounting.us@energyvault.com for processing.
Email EU invoices to: accounting@energyvault.ch for processing.

5 of 6

ENERGYVAULT000338

23. QUALITY CONTROL.
Seller shall inspect all Work and conduct a continuous program of Quality Assurance and Quality Control ("Quality Program") for all of the Work under this Purchase Order. Within thirty (30) days after Notice to Proceed or the effective date of this Purchase Order, Seller shall submit its written Quality Program together with its plans for inspection and testing to Purchaser for review and acceptance. The objective of the Quality Program is to provide products which fully meet the specified requirements for the Work and to prevent defective product from being delivered and incorporated into the Work. The Seller's Quality Program shall be specific to this Purchase Order and in sufficient detail to delineate those items to be inspected and tested in Inspection and Test Plans ("ITP"). The Quality Program must describe all of Seller's activities contemplated to meet the requirements of the engineering Specifications, Drawings, referenced codes and standards, and including provisions for adequate documentation thereof. Seller shall similarly require its subcontractors and suppliers to provide and maintain approved quality control systems, where applicable. The Quality Program shall provide for controlling its subcontractors and suppliers and for assuring that such subcontractors' and suppliers' quality control systems are appropriate for the scope of their work and comply with this Purchase Order. Throughout performance of the Work, including work performed during any warranty period, Seller shall comply with its Quality Program and any other applicable requirements of this Purchase Order.

25. BONDS.
If payment and performance bonds are required, the forms of which will be in a form acceptable to Purchaser. The bonds will be written by a surety acceptable to Purchaser.

26. DESIGN SERVICES.
26.1 If design services are to be provided, Seller will furnish by properly licensed and qualified designers all necessary professional design services for the design of the Work.
26.2 If design services are to be provided, Seller shall submit for Purchaser's approval in accordance with the Schedule, design development documents, working drawings, specified shop drawings and samples, and data and specifications of materials proposed to be incorporated in the Work. Seller shall provide copies of approved drawings in the form and quantity specified by Purchaser. Seller shall advise Purchaser and other affected trades of all design changes in a timely manner so as to preclude additional costs and conflicts with work of others on the Project. Seller shall be liable for the extra costs incurred for failure to provide such timely notice.
26.3 If design services are provided, Seller shall indemnify and defend Purchaser from all claims and losses arising from the negligent acts, errors or omissions of Seller in the performance, non-performance or failure to render professional services under this Purchase Order.

27. MISCELLANEOUS.
27.1 This Purchase Order includes all changes and addenda to the Contract Documents to date, constitutes the entire understanding of the parties hereto, and supersedes any prior proposals, understandings, correspondence, and/or agreements.

27.2 If any provision of this Purchase Order is held to be illegal, invalid, or unenforceable under present or future laws, such provision shall be reformed to provide as close to the original intent of the provision as possible while still being enforceable. However, in the event such a reformation is not possible then (i) such provision shall be fully severable; (ii) this Purchase Order shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never been comprised a part of this Purchase Order; and (iii) the remaining provisions of this Purchase Order shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Purchase Order.

PO000778

Please note invoices that do not report the correct PO number will not be processed.
Email US invoices to: accounting.us@energyvault.com for processing.
Email EU invoices to: accounting@energyvault.ch for processing.

6 of 6

ENERGYVAULT000339